CHARLES L. SOMMERS AND OTHERS v. CITY OF ST. PAUL
AND OTHERS.[1]

June 19, 1931.

No. 28,529.

*Lewis L. Anderson,* for appellants.
*Barrows, Stewart, Jackson & Junkin,* for respondents.

[1]Reported in 237 N. W. 427.

OLSEN, J.

Defendants appeal from the judgment.

Plaintiffs, taxpayers of the city of St. Paul, brought this action to enjoin the city and its officials from adopting and making effective a budget and appropriations for the departments and activities of the city government for the year 1931, claiming that such appropriations were some $422,873 in excess of the limitation placed upon the cost of government of the city by its charter. The trial court sustained plaintiffs' claim and granted injunction.

The facts were stipulated, and the court adopted the stipulation as its findings of fact. The only question here for review is whether the findings of fact sustain the conclusions of law granting the injunction.

■ Under the city charter a proposed budget for the following year is prepared by the comptroller in the month of August each year and submitted to the city council, giving a detailed estimate of the amount to be expended by each department of the city and for all governmental activities of the city for the following year. Hearings are had before the council, and after making such changes therein as it deems proper a resolution is then passed by the council fixing the amount to be expended by the city in each of its departments and for all other city activities. The budget so adopted is to cover the total cost of government of the city for the year, with the exceptions noted in § 201 of the charter, hereafter quoted.

The city of St. Paul is governed by a home rule charter. Its public schools are not a separate school district organization but a part of the city government. The charter [§ 201] provides as follows:

"The total cost of the government, including schools, of the City of St. Paul, in any one calendar or fiscal year, with the exception of the amount necessary to meet maturing bonds or levy certificates due, or similar obligations as they come due, shall not exceed Thirty Dollars ($30) per capita for each inhabitant of said City; provided that the cost of operating public utilities where the cost is met by revenues collected from patrons for the service or from

other like revenue, or expenditures made from the proceeds of bond issues, or interest on bonds, shall not be considered part of the cost of government; provided that at least $400,000 of the amount appropriated for the cost of the government shall be expended in each year in paying the City's share of the cost of street paving or construction of trunk or main sewers, or if any part of said $400,000 shall not be so appropriated, it shall be used to pay interest on bonds as a part of the cost of government within the $30.00 per capita limitation; and provided that proceeds from bond issues shall not be used to pay cost of current operation or maintenance; and the Council shall have no authority to make appropriations in excess of the limitations named herein.

"Notwithstanding any limitation contained in Section 236 or in any other provision of this Charter, the Council shall have authority to contribute out of the general funds of the City or from the proceeds of bond issues, towards the payment of the cost of trunk or main sewers.

"To determine the population upon which this per capita limitation shall be based, the Comptroller and the Council shall take the United States census figures of population for St. Paul last announced previous to the completion of any annual budget, and shall add thereto for each year that has elapsed since said United States census a number equal to one-tenth of the increase in the population of the City of St. Paul during the period between said census and the last previous United States census. It is the intent of this section that this limitation shall cover all governmental outlay as well as maintenance of government, except as stated above and in the case of local improvements paid for by special assessments."

The limitation of the cost of government to $30 per capita is for the protection of the taxpayers of the city. The provision should be given a fair construction so as to accomplish the purpose for which it was enacted.

In making up the budget and fixing the total cost of government, including schools, for the city for 1931, the city officials and council intentionally excluded therefrom $450,000 to be received by the

city for state and federal aid for schools. The city claims that this is not a part of the cost of government of the city and need not be included in figuring the total cost of government. The court concluded that it was a part of the total cost of government and restrained the defendants from excluding it. Counsel argues that because this money does not come from any tax levied by the city therefore it should not be held to be any part of the total cost of the city government. But the money is received and used by the city for payment of costs of maintaining its schools just the same as if the money came from direct city taxes. In its final analysis it is money paid directly or indirectly in taxes to the state and federal governments by the people of' St. Paul. We believe it is a generally accepted fact that the state receives from the people of St. Paul in direct and indirect taxes much more than it repays to the city in school aid or other repayments. Part of the school aid at least is paid from a direct state tax. In the same way the federal government receives its revenues from taxes of various forms paid directly or indirectly by the people. We believe no one claims that St. Paul is receiving more from the federal government than is paid to it directly or indirectly by the people of the city.

But it is not necessary to base any decision on that theory. Section 212 of the charter provides:

"After the council shall have made the apportionment of revenue from miscellaneous sources among the several funds, as provided in this charter, it shall not later than the month of January in each year proceed to make a tax levy upon all taxable property within the city, as nearly as may be equal to the aggregate amount of the previously made appropriations for each of the funds specified in this chapter, after deducting therefrom miscellaneous receipts assigned to it, and any unexpended balance of the corresponding fund of the previous year, available for said fund, and also such further sum or sums of money as the council may have reason to believe will be received for the credit of said fund from any other source. All such tax levied shall be itemized and the amount levied for each fund be separately stated therein."

Here is a quite clear indication that moneys received from any other source than a direct tax levy by the city shall be included in the estimated total cost of government so as to relieve the taxpayers to that extent, for after providing in § 201 that the limitation shall cover all governmental outlay as well as maintenance of government, except as therein stated, none of which exceptions apply to the state or federal aid received, § 212 provides that when the tax levy is made sums of money which the council may have reason to believe will be received for the credit of any fund from any other source shall be deducted from the tax levy made to cover the appropriations in the budget.

Reading the two sections of the charter together, it fairly appears that money received from the state and federal governments as school aid and used by the city for that purpose is a part of the total cost of government of the city.

Prior charter provisions, later amended and not now in force, are stated in the stipulation. We find nothing therein affecting the conclusion reached.

It is shown that in each of the years 1922 to 1930, inclusive, the city council excluded from the estimated total cost of government the estimated amount of state and federal school aid. It is argued that this is a practical construction of the charter provisions and continued for such a length of time that it should now be held binding upon the plaintiffs. The situation of the parties here is different than would be the relation of two private parties. The patience and long suffering of taxpayers have become almost proverbial. As a rule they are not vigilant in checking up or investigating the acts of their municipal officers. Few of them would be qualified to determine from the city charter and the records of the city council their legal rights as to the matter here in controversy. Good lawyers seem to disagree on the question. To permit city officials to invoke their own actions as a practical construction of their powers simply because no taxpayer has asserted his rights for a number of years, probably without being aware thereof, might result disastrously. In any event it was a question of fact

for the trial court, and the evidence and findings are not conclusive against the decision on that question.

In the case of City of Camilla v. Cochran, 160 Ga. 424, 128 S. E. 194, the city was seeking to assess against property, for certain paving, the entire cost of the improvement. The state highway department had contracted and obligated itself to pay the contractor a material portion, $17,000, of the cost of the paving. The city was not obligated to repay any part of this sum to the state or highway department. If permitted to assess and collect the entire cost, the city would profit to the extent of $17,000. The court very properly held that the city, not having paid and not being liable for the sum so to be paid by the state, could not include that part of the cost in the assessment.

Other cases cited have been examined and found not to have any material bearing upon the question we are considering.

■ The next question is whether the city council used the correct population figures in applying the cost limitation. The 1930 federal census was announced in July, 1930, and gave St. Paul a population of 271,418. The budget and appropriations here in question were prepared and submitted to the city council on August 15, 1930, and fixed and approved by it about October 1, 1930, to cover the expenditures for the year 1931. The city council took the census figures for 1930 and added thereto ten per cent of the increase in population over and above the figures of the 1920 census, and so arrived at the figure of 275,090 as the population basis to be applied.

The trial court found that the 1930 census figures should have been used. The language of § 201 of the charter, that the council shall take the census figures of population last announced previous to the completion of any annual budget and shall add thereto for each year that has elapsed since said census ten per cent of the increase in population during the period between said census and the last previous census, seems a sufficient basis for the conclusion of the trial court. At the time the budget was completed less than four months had elapsed since the census was announced. Primarily the federal census figures were to be the basis upon which to

apply the per capita limitation. The trial court might reasonably construe the charter provision to mean that as no year had elapsed since the 1930 census the budget prepared that year should apply the 1930 census figures.

Similar claim is made here as to practical construction. What has already been said on that subject covers the question.

■ We are passing upon the sufficiency of the findings to sustain the conclusions of law made by the trial court. As noted, the trial court adopted the stipulation of facts made by the parties as its findings of fact. The findings so made are rather of evidentiary facts than findings of ultimate facts on the questions considered. But no motion was made for additional or amended findings and no objection made to their form. Considered in connection with the stated conclusions of law, which may if necessary be treated as findings of fact, we think the findings are sufficient and sustain the conclusions reached by the trial court.

Our rule is that the trial court's findings are not to be set aside unless clearly or manifestly against the weight of the evidence or without any reasonable support in the evidence. The rule applies although the construction of written or documentary evidence is involved, and even if this court might be inclined to draw different inferences. Humphrey v. Havens, 12 Minn. 196 (298); Cornish, C. & G. Co. v. Antrim Co-op. D. Assn. 82 Minn. 215, 84 N. W. 724; Treat v. Kellogg, 104 Minn. 54, 115 N. W. 947; Oertel v. Pierce, 116 Minn. 266, 133 N. W. 797, Ann. Cas. 1913A, 854; Wunder v. Turner, 120 Minn. 13, 138 N. W. 770; Wann v. N. W. Trust Co. 120 Minn. 493, 139 N. W. 1061; Pennington v. Roberge, 122 Minn. 295, 142 N. W. 710; Freeburg v. Honemann, 126 Minn. 52, 147 N. W. 827; Berndt v. Berndt, 127 Minn. 238, 149 N. W. 287; Barnum v. White, 128 Minn. 58, 150 N. W. 227, 151 N. W. 147.

The presumption that the trial court has properly determined questions of fact applies not only to its conclusions from disputed facts but also to its inferences reasonably drawn from undisputed facts. N. W. F. & M. Ins. Co. v. Connecticut F. Ins. Co. 105 Minn. 483, 117 N. W. 825.

The findings should not be set aside if upon any reasonable theory of the evidence they can be sustained, or if the evidence is of such a character that different persons might reasonably arrive at different conclusions.   Eich v. Taylor, 17 Minn. 145 (172) ; Benz v. Geissell, 24 Minn. 169.

Judgment affirmed.