# WILLIAM V. BICANIC AND OTHERS v. J. C. CAMPBELL COMPANY.[1]

May 25, 1945.

No. 34,005.

[1]Reported in 19 N. W. (2d) 7.

M. H. *Greenberg* and *Henry Paull,* for appellants.
*McCabe, Gruber & Clure* and *H. G. Gearhart,* for respondent.

MATSON, JUSTICE.

Plaintiffs appeal from an order denying a new trial in an action brought to recover overtime compensation under the Fair Labor Standards Act of 1938, 29 USCA, § 201, *et seq.* Judge Fesler, before whom the case was tried, became incapacitated before he could make his decision therein, and upon stipulation the matter was submitted upon a transcript of testimony to Judge Freeman, who made findings of fact and conclusions of law to the effect that (1) the plaintiffs and the defendant were engaged in the production of goods for commerce within the meaning of said act, and that (2) none of the plaintiffs had worked hours in excess of the time for which they had already been paid. The sole issue upon appeal involves the question of whether there was unpaid overtime.

Plaintiffs were employed by defendant either as cook, cookee, or bull cook in its logging camps operated for the cutting, skidding, peeling, loading, and hauling of pulpwood and logs. The camp cook prepared all three meals, inclusive of lunches carried by the men to work and those eaten in camp between meals, cut the meat, did all the baking, took care of the food, and generally supervised the kitchen and all eating facilities. The cookees set and cleared

the tables, washed and put away the dishes and cooking utensils, and otherwise assisted the cook as needed. The bull cooks supplied wood and water for the entire camp, built fires in the bunkhouses, took care of the lamps, swept and scrubbed the bunkhouses, and performed other janitorial duties. In a few instances, as found by the court, a cook was independently employed and paid by certain shackers who were cutting pulpwood for defendant but who neither stayed nor ate any meals at defendant's camps.

The trial court, as part of its findings, found:

"7. That during all of the time these various plaintiffs worked for the defendant they were working under a contract between the employer and the union to which they belonged, which provided the rate of pay that they should receive per hour and the number of hours available to them to work. That the terms of the contract were known to all of the plaintiffs. That they were paid on the basis of the hours available, both straight time and overtime, and the rate of wages fixed in the contract was not in any case below the minimum to be paid according to the provisions of the Fair Labor Standards Act.

"That except in rare instances they were able to perform their work in the hours available. That in all instances where they were unable to do their work in the hours available and brought that fact to the attention of the defendant, they were allowed additional hours to take care of the extra time put in. *That a period of two or more hours each day was available to the cooks, during which time they could do as they pleased and were not required to be on duty or on call and could not be subject to rebuke or criticism if they were not available in case some emergency arose. That longer periods of time were available to the cookees and bull-cooks when they were on their own and could do as they pleased without fear of just criticism or rebuke.*" (Italics supplied.)

A careful examination of the record shows a sharp and definite conflict of testimony between that of the plaintiffs and their witnesses and that of the defendant's witnesses. Plaintiffs contend

that they actually worked more hours per day than the number of hours available under the union contract, and that they were not paid for this extra time. Defendant, in denying this contention, alleges that plaintiffs' work was all performed within the hours available, except in a few cases when the plaintiffs, upon request, were allowed necessary additional paid hours. Plaintiffs allege, however, that with a few exceptions it was useless to ask for additional paid hours, because defendant's representatives asserted that payment could be made only on the basis of the contract hours available regardless of the hours worked. Plaintiffs further contend that they were uncertain as to their rights until the decision in Hanson v. Lagerstrom (8 Cir.) 133 F. (2d) 120, established definitely that as employes they were entitled to the benefits of the Fair Labor Standards Act. Concretely, 12 contract hours were in most instances available to the cooks, who asserted that their work actually required 14 hours per day. The gist of the whole dispute settles around the question as to whether or not the cooks, as well as the cookees and bull cooks, enjoyed each day two or more free hours when they had no work and' were left to their own devices. Plaintiffs assert that their work required all of 14 hours and that, regardless of whether they were at all times occupied in actual work, they were, nevertheless, *required to be on actual duty subject to call,* and that therefore the entire 14-hour period, even though a part thereof might be spent in idleness or recreation, constituted *working time compensable under the maximum hours and overtime provisions* of the Fair Labor Standards Act. Testimony adduced by defendant was to the effect that plaintiffs enjoyed two or more hours each day when they were *not on duty and not subject to call,* and that they were free to leave the premises to go fishing, visiting, and otherwise to enjoy and dispose of such free time as they saw fit without restriction.

The union contract which had been in force for a considerable time and which had been negotiated between the plaintiffs' union and the Timber Producers Association, of which defendant is a member, established a sliding scale of hours to be made available

to each employe according to the number of men served, and this contract also provided a definite procedure for the settlement of grievances. There was considerable evidence that all employes were familiar with its provisions. Defendant has contended by testimony and argument that the contract was based on a mutual understanding and a recognition of the hours required to perform the work as determined by logging-camp experience and custom of many years' standing. This plaintiffs denied, by contending that the contract was merely a device for paying the men a sum equivalent to the former monthly wages (as paid before the plaintiffs were ruled to be under the Wage and Hour Act) "based on the hours of work made available and not the hours actually worked." The evidence as a whole stands in conflict and is reasonably subject to diverse inferences. A detailed analysis and restatement of the evidence will serve no useful purpose. As already indicated, the trial court's findings were expressly in favor of defendant's contention as to the number of hours plaintiffs were on duty.

■ Plaintiffs assert that the trial court, by the memorandum accompanying its findings, indicated that it had applied the wrong test in making its decision by assuming that plaintiffs were entitled to pay merely for hours spent in actual work and not for the additional hours when the plaintiffs, although not actually working, were required to be on the job and subject to call. Regardless of the interpretation placed on the language of the trial court's memorandum, it is well established by prior decisions of this court that a memorandum of a trial judge attached to his findings or order, even though expressly made a part of such findings or order, may not be used to impeach, contradict, overturn, or modify the positive and unambiguous terms of such findings or order.[2]

---

[2]Wilson v. Davidson, 219 Minn. 42, 17 N. W. (2d) 31; see, McGovern v. Federal Land Bank, 209 Minn. 403, 296 N. W. 473; Riebel v. Mueller, 177 Minn. 602, 225 N. W. 924, 66 A. L. R. 1; Gay v. Kelley, 109 Minn. 101, 123 N. W. 295; Pinkerton v. Wisconsin Steel Co. 109 Minn. 117, 123 N. W. 60; Kleidon v. Glascock, 215 Minn. 417, 10 N. W. (2d) 394; 1 Dunnell, Dig. & Supp. § 338.

Here, the trial court in its findings in clear and explicit language found that plaintiffs enjoyed two or more free hours each day when they were not on duty and not subject to call, which free time they could utilize as they pleased without fear of criticism or rebuke. We observe in passing, however, that a reading of both the findings and the memorandum, as a unit, indicates that Judge Freeman had in mind the correct rule and applied it in arriving at his decision.

■ The views of Judge Fesler, who heard the case but became incapacitated before he could make his findings and decision, are irrelevant and may not be considered upon review in determining whether the findings made by Judge Freeman are sustained by the evidence.

■ Waiting or free time, even though devoted to idleness and recreation, may constitute compensable working time under the provisions of the Fair Labor Standards Act if the employes are required to be on actual duty and subject to call. Armour & Co. v. Wantock, 323 U. S. 126, 65 S. Ct. 165; Skidmore v. Swift & Co. 323 U. S. 134, 65 S. Ct. 161. In some occupations, according to the administrator of the Wage and Hour Division, not all periods of inactivity, though the employe is subject to call, constitute working time.[3] Whether in a concrete case such free or waiting time

[3]"The Administrator thinks the problems presented by inactive duty require a flexible solution, rather than the all-in or all-out rules respectively urged by the parties in this case, and his Bulletin endeavors to suggest standards and examples to guide in particular situations. In some occupations, it says, periods of inactivity are not properly counted as working time even though the employee is subject to call. Examples are an operator of a small telephone exchange where the switchboard is in her home and she ordinarily gets several hours of uninterrupted sleep each night; or a pumper of a stripper well or watchman of a lumber camp during the off season, who may be on duty twenty-four hours a day but ordinarily 'has a normal night's sleep, has ample time in which to eat his meals, and has a certain amount of time for relaxation and entirely private pursuits.' Exclusion of all such hours the Administrator thinks may be justified. In general, the answer depends 'upon the degree to which the employee is free to engage in personal activities during periods

falls within the act is a question of fact to be resolved by appropriate findings of the trial court.[4]

We have carefully considered the decision of the United States Supreme Court handed down May 7, 1945, in Jewell Ridge Coal Corp. v. Local No. 6167, United Mine Workers of America, 325 U. S. 161, 65 S. Ct. 1063, and find nothing therein at variance with the principles herein expressed.

■ Here, the trial court found that plaintiffs had not worked any hours in excess of those for which they had been fully paid, and specifically determined that plaintiffs enjoyed each day certain free or waiting time when they were not on duty and not subject to call. Are these findings sustained by the evidence? The findings of fact of a trial court are entitled to the same weight as the verdict of a jury and will not be reversed on appeal unless they are manifestly and palpably contrary to the evidence. Bang v. International Sisal Co. 212 Minn. 135, 4 N. W. (2d) 113, 141

of idleness when he is subject to call and the number of consecutive hours that the employee is subject to call without being required to perform active work.' 'Hours worked are not limited to the time spent in active labor but include time given by the employee to the employer. * * *' " Skidmore v. Swift & Co. 323 U. S. 138, 65 S. Ct. 161, 163. See, Wage and Hour Division, Interpretative Bulletin No. 13.

[4] "For reasons set forth in the Armour case decided herewith we hold that no principle of law found either in the statute or in Court decisions precludes waiting time from also being working time. We have not attempted to, and we cannot, lay down a legal formula to resolve cases so varied in their facts as are the many situations in which employment involves waiting time. Whether in a concrete case such time falls within or without the Act is a question of fact to be resolved by appropriate findings of the trial court. Walling v. Jacksonville Paper Co. 317 U. S. 564, 572, 63 S. Ct. 332, 337, 87 L. ed. 460, 468. This involves scrutiny and construction of the agreements between the particular parties, appraisal of their practical construction of the working agreement by conduct, consideration of the nature of the service, and its relation to the waiting time, and all of the surrounding circumstances. Facts may show that the employee was engaged to wait, or they may show that he waited to be engaged." Skidmore v. Swift & Co. 323 U. S. 136-137, 65 S. Ct. 163.

A. L. R. 657; Schultz v. Brennan, 195 Minn. 301, 262 N. W. 877; 1 Dunnell, Dig. & Supp. § 411.

■ The same rule applies here, where the findings were made by a judge other than the one who presided at the trial. Wunder v. Turner, 120 Minn. 13, 138 N. W. 770. Although the trial court in making the findings did not have the witnesses before him, the same weight must be given to such findings as if based on testimony given by witnesses orally in his presence. State Bank v. Walter, 167 Minn. 37, 208 N. W. 423. See, Freeburg v. Honemann, 126 Minn. 52, 57, 147 N. W. 827, 829; and Sommers v. City of St. Paul, 183 Minn. 545, 237 N. W. 427.

■ As a court of review it is not for us to usurp the function of the trial court by attempting to weigh the evidence as if trying the matter *de novo* (Rebne v. Rebne, 216 Minn. 379, 13 N. W. [2d] 18) or by attempting to determine the weight and credit to be given the testimony of witnesses when such testimony is in conflict. Exrieder v. O'Keefe, 143 Minn. 278, 173 N. W. 434. Our function in determining this issue of fact is limited to that of carefully examining the record to ascertain if the findings and conclusions of Judge Freeman are sustained by the evidence. The evidence is in definite conflict. We cannot say that the findings are manifestly and palpably contrary to the preponderance of the evidence as a whole. Although the record would support findings to the contrary, there is ample evidence to support the findings made, and they must be sustained even though this court might be inclined to draw contrary inferences from the evidence and come to a different conclusion. Sommers v. City of St. Paul, 183 Minn. 545, 237 N. W. 427. Even if it were both proper and possible to determine and consider the attitude of Judge Fesler and to determine that he would have made a contrary decision, it would serve no purpose other than to illustrate that, upon the evidence, reasonable minds might justifiably come to different conclusions.

Affirmed.