## STRAUGHN v. SCHLUMBERGER WELL SURVEYING CORPORATION.
### Civil Action No. 473.

District Court, S. D. Texas, Houston Division.

July 22, 1946.

---

[1] No opinion for publication.

512

Combs & Dixie and Chris Dixie, all of Houston, Tex., for plaintiff.

Baker, Botts, Andrews & Wharton and J. C. Hutcheson, III., all of Houston, Tex., for defendant.

KENNERLY, District Judge.

This is a suit by plaintiff, Lloyd L. Straughn (for brevity called Plaintiff), against defendant, Schlumberger Well Surveying Corporation (for brevity called Defendant), under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., for pay for overtime work from the time Sections 6 and 7 of the Act became effective, to January 3, 1941, when plaintiff left defendant's employ. Also for damages and attorney's fees.

Defendant denies that plaintiff worked for it more hours per week than permitted by the Act, and says that if he did, he was paid as required by such Act. Defendant also says that plaintiff was not engaged in commerce or in the production of goods for commerce, and that defendant is a bona fide service establishment within the meaning of Section 13(a) of the Act. It also pleads the Texas Two Year Statute of Limitation and the Louisiana One Year Statute in bar of recovery.

The facts are substantially as follows:

(a) The facts, in the main, have been stipulated. The stipulation is lengthy, and there is no reason to copy it here. It is adopted and referred to and may be quoted in part.

(b) On the issue of the number of hours worked each week by plaintiff, there is attached to the stipulation photostat copies of so-called "Field Time Reports" for the period from October 26, 1938, to December 29, 1940 (Exhibits B-1 to B-57 attached to Stipulation). These Field Time Reports show plaintiff's time as he turned it in to defendant, i. e., the number of hours of different kinds of work performed *each day* by plaintiff from October 26, 1938, to December 29, 1940. These Field Time Reports have been broken down and tabulated, and show the number of hours of work performed *each week* by plaintiff (Exhibit C attached to stipulation). With respect to same, the stipulation says:

"Defendant does not agree that the hours set out in Exhibits B-1 to 57 and Exhibit C are correct but simply that they are based on the reports turned in by plaintiff."

(c) The question is, therefore, raised of whether plaintiff correctly turned in his

time, and whether the "Field Time Reports" are correct.

Plaintiff testified and appears to be a credible person and worthy of belief. He testified that he correctly turned in his time and that so far as he knows such "Field Time Reports" are correct. Further, such Reports were placed and kept by defendant in its files, and so far as this record shows, no objections were raised thereto. I find such "Field Time Reports" to be substantially correct.

(d) In such "Field Time Reports," there are instances where it is shown that plaintiff worked more hours in a day than there are hours, i. e., more than 24 hours in a day. Plaintiff satisfactorily explains that. He says on a job, or several jobs, which consumed several days time, he for convenience sometimes reported all or part of the number of hours worked on such job on such several days as having been worked on one of the days, usually the first day, he was on the job or jobs. There are perhaps some inaccuracies in it. While plaintiff contends to the contrary, I do not think this sufficient to authorize or require the rejection of these "Field Time Reports," and as stated I find them substantially correct and further find that the break-down thereof (Exhibit C) correctly shows the number of hours worked each week by plaintiff, and the particular kind of work he was doing during such hours. I find all such work to have been in commerce or in the production of goods for commerce.

(e) Such "Field Time Reports" show the kind of work in which plaintiff was engaged during the hours set forth therein, to-wit: "Garage," "Driving," "On Barge," "Idle at Well," and "Survey."

The meaning of "Garage," "Driving," "On Barge," "Idle at Well," etc., is fully explained by plaintiff.

With respect to "Garage," he says:

"Q. Now, Mr. Straughn, this blank provides for you to report garage, driving, idle and well survey time, all separately, does it not? A. Yes.

"Q. Did you report your time separately in this way? A. Yes, sir.

"Q. Please tell the Court what type of work was involved in garage work. A. That was car repair and maintenance of all equipment, well surveying equipment. That was where they would repair a cable, and we had to take care of the electrodes, where the current was sent through the electrodes, we had to take care of that and see that they were properly dried; and then the mechanical end, the winch, see that the brakes were lined, and then to make a report to the garage mechanic to fix them if they were defective.

"Q. During the garage time, did you work in any way as an automobile mechanic and repair the automotive equipment as such as distinguished from the technical equipment on the trucks? A. No. There were men for that purpose in the garage.

"Q. There were automobile mechanics there? A. There was a man called a garage foreman and he had charge of repairing the automobiles."

With respect to "Driving," he says:

"Q. On the blanks where you have reported driving, state what type of work that would involve? A. Well, from the time we left the garage until we reached our destination. That was distinguished from the time we were on the job. And also until we got back to our headquarters. We carried that as driving time.

"Q. Please state whether or not those entries mean necessarily that you were at the wheel or not? A. Well, we split up on the driving.

"Q. In other words, driving means going to and from the well, without reference to who was at the wheel, is that correct? A. Yes, sir, that is right."

With respect to "Idle at Well," he says:

"Q. Please state what is meant by 'idle at well?' A. Waiting at the well. We would get there some times and they were still drilling, and we would wait until they got their depth that they wanted, and then they would have to pull the drill stem out of the hole before we could set up our equipment on the derrick floor.

"Q. I notice, Mr. Straugh, that some times in connection with these field reports that the idle at the well some times shows as much as six, seven, eight and nine hours. Please tell the Court how that would come

about. A. Well, in some cases we would be called to do a survey of a well or perforate a well, and we would get there and the plug would not be drilled, and we would have to wait until they got to where they wanted it before we could go to work."

With respect to "On Barge," he says:

"Q. On some time records there is depicted in a separate item barge time. Tell the Court what you were doing during the time identified as 'barge time.' A. Going from the landing. We would drive to the landing where we loaded the equipment on barges, and were then towed by tow boats out to the water locations so we could service the well."

By "Survey" is meant the time that he was actually engaged in surveying or working on a well.

■ 1. I conclude that defendant was not a service establishment within the meaning of Section 13(a). See Roland Electrical Co. v. Walling, 326 U.S. 657, 66 S.Ct. 413.

Counsel for both parties mention the Opinion in Corbett v. Schlumberger, D.C., 43 F.Supp. 605, decided by this Court February 17, 1942. Quite a number of the Opinions of this Court have become "moot" because of decisions of the Appellate Courts.

■ 2. I conclude that the stipulation and its exhibits, together with the evidence, are sufficient to show that plaintiff worked the number of hours each week from October 26, 1938, to December 29, 1940, shown by Exhibit C attached to the stipulation, in commerce or in the production of goods for commerce. I think plaintiff has, under the authorities, satisfied the burden of proof on this issue. In Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 66 S.Ct. 1187, 1192, it is said:

"But we believe that the Circuit Court of Appeals, as well as the master, imposed upon the employees an improper standard of proof, a standard that has the practical effect of impairing many of the benefits of the Fair Labor Standards Act. An employee who brings suit under § 16(b) of the Act for unpaid minimum wages or unpaid overtime compensation, together with liquidated damages, has the burden of proving that he performed work for which he was not properly compensated. The remedial nature of this statute and the great public policy which it embodies, however, militate against making that burden an impossible hurdle for the employee. Due regard must be given to the fact that it is the employer who has the duty under § 11(c) of the Act to keep proper records of wages, hours and other conditions and practices of employment and who is in position to know and to produce the most probative facts concerning the nature and amount of work performed. Employees seldom keep such records themselves; even if they do, the records may be and frequently are untrustworthy. It is in this setting that a proper and fair standard must be erected for the employee to meet in carrying out his burden of proof.

"When the employer has kept proper and accurate records the employee may easily discharge his burden by securing the production of those records. But where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes a more difficult problem arises. The solution, however, is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act. In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate. See Note, 43 Col.L.Rev. 355.

"The employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the requirements of § 11(c) of the Act. And even where the lack of accurate records grows out of a bona fide mistake as to whether certain activities or non-activities constitute work, the employer, having received the benefits of such work, cannot object to the payment for the work on the most accurate basis possible under the circumstances. Nor is such a result to be condemned by the rule that precludes the recovery of uncertain and speculative damages. That rule applies only to situations where the fact of damage is itself uncertain. But here we are assuming that the employee has proved that he has performed work and has not been paid in accordance with the statute. The damage is therefore certain. The uncertainty lies only in the amount of damages arising from the statutory violation by the employer. In such a case 'it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts.' Story Parchment Co. v. Paterson Co., 282 U.S. 555, 563, 51 S.Ct. 248, 75 L.Ed. 544. It is enough under these circumstances if there is a basis for a reasonable inference as to the extent of the damages. Eastman Kodak Co. of New York v. Southern Photo Materials Co., 273 U.S. 359, 377-379, 47 S.Ct. 400, 404, 405, 71 L.Ed. 684; Palmer v. Connecticut Ry. & Lighting Co., 311 U.S. 544, 560, 561, 61 S.Ct. 379, 384, 385, 85 L.Ed. 336; Bigelow v. RKO Radio Pictures, Inc., 327 U.S. 251, 263–266, 66 S.Ct. 574, 579, 580 [90 L.Ed. 670]."

3'. I conclude that the stipulation and its exhibits, together with the evidence, show that *all* of defendant's operations and *all* of plaintiff's work were in commerce or in the production of goods for commerce, within the meaning of the Act. Warren Bradshaw Drilling Co. v. Hall, 317 U.S. 88, 63 S.Ct. 125, 87 L.Ed. 83; Roland Electrical Company v. Walling, supra, and cases there cited and discussed.

4. I conclude that the stipulation and its exhibits, together with the evidence, show that "Barge" time is on the same basis as "Driving" time, and that plaintiff is entitled to recover for both. Also that plaintiff is entitled to recover for "Idle at Well" time.

None of the cases cited by counsel seem to me to be directly in point. These cases are Armour & Co. v. Wantock, 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118; Skidmore v. Swift & Co., 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124; Thompson v. Loring Oil Co., D.C., 50 F.Supp. 213; Woods v. Wilkerson, D.C., 40 F.Supp. 131; Bicanic v. J. C. Campbell Co., 220 Minn. 107, 19 N.W.2d 7; Barker v. Georgia Power & Light Co., D.C. Ga.;[1] Perry v. George P. Livermore, Tex. Civ.App., 165 S.W.2d 782; Bulot v. Freeport Sulphur Co., D.C., 45 F.Supp. 380; Tennessee Coal, Iron & Railroad Co. v. Muscoda Local, 321 U.S. 590, 64 S.Ct. 698, 88 L.Ed. 949, 152 A.L.R. 1014; Jewell Ridge Coal Corporation v. Local No. 6167, 325 U.S. 161, 65 S.Ct. 1063, 89 L.Ed. 1534; Dollar v. Caddo River Lumber Co., D.C., 43 F.Supp. 822; Sirmon v. Cron & Gracey Drilling Corporation, D.C., 44 F.Supp. 29; Walling v. Peavy-Wilson Lbr. Co., D.C., 49 F.Supp. 846; Walling v. Mid-Continent Pipe Line Co., 10 Cir., 143 F.2d 308.

The solution of the problem is found in the part of the stipulation which sets forth the duties of plaintiff in assisting in the operation of a highly technical mechanism. I quote (italics mine):

"Plaintiff was employed by the defendant from the 20th day of April, 1936, until January 3, 1941, during all of which time the defendant was engaged in the type of business as herein stated. During the time involved in this suit, plaintiff was employed as a helper on one of defendant's crews mentioned above and his duties consisted of the *care and maintenance* of the machinery and apparatus used in defendant's business herein described. The work, among other things, included the checking of the equipment at the defendant's garage *before the equipment was carried out on the job,* and this included testing the cable and electrical equipment to be certain that they

---

[1] No opinion for publication.

were functioning properly; *plaintiff was required to accompany said equipment when it left the garage on trucks to the site where the work was to be done* and there assemble the equipment for the work, whether to be testing, coring, perforating, or other services rendered by the defendant; to maintain said equipment in an efficient condition and state of repair while it was being used, to assist in the making of well surveys or gun perforations, to assist in lowering into and lifting from the well the electrode and other apparatus used in the said surveying and perforating and coring work; to return it safely after said work was completed and *accompany any of the said equipment to any place directed by the defendant.*"

 I gather from the contract of employment of plaintiff and from the stipulation and the evidence that defendant's operations, equipment, and business were more or less of a private and confidential nature, and doubtless this constant supervision of and attention to defendant's equipment required of plaintiff was due in part to this fact.

I think plaintiff is entitled to recover for "Barge" time, "Driving" time, "Idle at the Well" time, as well as "Garage" and "Survey" time.

5. I conclude that the monthly payments made to plaintiff do not satisfy the requirements of the Act, Overnight Motor Transportation Co. v. Missell, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682, but such case seems to point out the method of computation in this case.

6. I conclude that plaintiff, having been employed in Louisiana, and having lived and worked for defendant most of the time in Louisiana and never in Texas, his contract of employment was a Louisiana contract and governed by Louisiana Law, and that under the Louisiana One Year Statute of Limitation, plaintiff may not recover overtime for work performed more than one year prior to the filing of this suit on March 6, 1941. He is entitled to recover for overtime for work performed only from March 6, 1940, to December 29, 1940. Loggins v. Steel Const. Co., 5 Cir., 129 F.2d 118; Divine v. Levy, D.C., 45 F.Supp. 49; Pritchard v. Norton, 106 U.S. 124, 1 S.Ct.

102, 27 L.Ed. 104; Shreveport Laundries v. Teagle, La.App., 139 So. 563; Home Insurance Co. v. Dick, Tex.Com.App., 15 S.W. 2d 1028; Atchison T. & S. F. Ry. Co. v. Mills, 53 Tex.Civ.App. 359, 116 S.W. 852; Ross v. Kansas City S. Railway, 34 Tex.Civ. App. 586, 79 S.W. 626; Munos v. Southern Pac. Co., 5 Cir., 51 F. 188; Wells Fargo Bank & Union Trust Co. v. Titus, D.C., 41 F.Supp. 171, Id., 5 Cir., 134 F.2d 223.

7. Plaintiff is not only entitled to recover overtime, but damages and attorney's fees, as provided in the Act. Overnight Motor Transportation Co. v. Missell, supra.

Let decree be drawn and presented in accordance herewith.