Iowa Bonding & Casualty Company, Appellant, v. Frank Cram & Sons et al., Appellees.

No. 38687.

December 13, 1929.

Kelly, Shuttleworth & McManus, for appellant.

Clark & Byers, for appellees.

Morling, J.—The basis of the suit is a stipulation in the accepted application by defendants to plaintiff for contractor's bond, whereby defendants agree "to pay to the company upon the execution of the said bond, if it be a final contract bond * * * $1,066.26 in advance for two years and $1,066.26 annually in advance thereafter" until company's receipt of evidence of discharge, and "to pay to the company upon the completion of the contract an additional premium at the same rate, computed upon any increase of the original contract price as shown by the architect in charge of the contract." Defendant asks to have the application reformed by eliminating the stipulation for additional premium. The court, though not in terms deny-

ing, did not grant this relief. Defendants have not appealed, and though there is evidence in support of the claim for reformation, we give no further attention to it. Plaintiff's pleaded cause of action is merely one at law (though we infer the whole case was tried in equity, because of the cross-petition), to recover because the total contract price for the work amounted to $271,731.12, instead of $106,625.68, as stated in the application. Defendants' contention is that the correct interpretation of the application requires the payment only of $1,066.26, which has been made.

Defendants had procured a street-grading contract, which recites that the amount of the work was estimated at 115,271 cubic yards of excavation, "more or less." The contract required the dirt removed to be placed on such streets or other property as the city official might designate. Defendants agreed to do the work "at the price of $0.925 per cubic yard for excavation of all material except rock * * * $2 per cubic yard for rock, the haul to be two thousand (2,000) feet or less from the center of gravity of each block. All greater distance than two thousand (2,000) feet * * * shall be overhaul and shall be paid for at the rate of two cents (2c) per cubic yard per one hundred (100) feet of overhaul which shall be in full compensation for the cost of the entire work, and the city of Des Moines shall not be liable to said party of the first part for extras of any kind, or for any damages which he may sustain by coming in contact with sand, water, or any other unforeseen obstacles or material, except rock, or by reason of unfavorable weather, it being expressly understood that the contract price above specified shall be in full for all work done under this contract." Butters, who was the representative of P. J. Clancy & Company, plaintiff's general agents, and who was "licensed" by plaintiff as its agent, solicited defendants for the bond. Other companies were also seeking the business. Defendants told Butters that the contract had an overhaul clause in it. Butters investigated at the city hall. "He just came back and submitted me [one of defendants] his price." (As we are not considering defendants' claim for reformation, we do not take into account the testimony in behalf of defendants relating to the alleged oral agreement between Butters and defendants.) Butters went out of defendants' office, and later returned, with the application

sued upon. This was on a printed form. Much of the data called for by the printed form was not filled in. The application as presented and signed contained data and blanks as follows:

"5. Penalty of bond: $53,400 * * *

"6. Contract price: $106,625.68. If the contract price is per unit of measure, state here the probable total amount of the contract: $................

"7. Name and address of the architect or engineer in charge: ----------------------------------------------

"8. The architect's or engineer's estimate of the cost of the work: $................ * * *

"15. Amount of contract price retained until work is completed: $106,375. * * *

"32. * * * In consideration of the execution by The Iowa Bonding and Casualty Company, * * * of the bond herein and hereby applied for the undersigned ...................... ............ agrees as follows: 1."

Here follows the stipulation of the application sued upon, as above set out. The contract is dated February 9, 1920; the bond, February 12, 1920. Butters, on September 17, 1920, collected of defendants the $1,066.26.

Butters told defendants, during the negotiations for the bond, that he had examined the contract with the city. Defendants "did not give information with regard to the bond" to Butters. More than two years after the work was completed, plaintiff asked for additional premium. The bond is in the penalty of $53,400. The bond recites, in the language of the contract (which Butters evidently got from the city hall) : "The amount of work is estimated at 115,271 cubic yards of excavation more or less."

Final estimates were ordered paid February 11, 1921. By them the total amount for excavation was $114,813.78, and for overhaul $156,917.44, a total of $271,731.22. There were long overhauls, and the difference between the amount of the estimated contract price and the amount finally allowed was due to the overhauls. Plaintiff introduced evidence "that premiums on bonds of this kind are computed upon the amount of the contract price. The rate upon city contracts for grading was $10 a thousand. That was the customary premium in force * * *

and one per cent of the contract price * * *'' It is not shown
that any price except $1,066.26 was made to defendants, or that
defendants were in any wise apprised (unless it be by the stipu-
lation of the application sued on, which defendants say, with-
out contradiction, they did not read) that any price or premium
was in contemplation or called for other than the $1,066.26.
Plaintiff does not claim fraud or mistake. It does not appear
that defendants knew of the customary premium alleged. The
plaintiff says that the estimated yardage of 115,271, in connec-
tion with the price of $.925 for excavation, as stated in the
contract, and the estimated total contract price of $106,625.68,
as stated in the application in connection with the premium,
$1,066.26, show that the premium was merely provisionally com-
puted on the basis of the estimated yardage and the agreed price
for excavation. The computation, however, on that basis only
approximates the stated contract price, and the application,
while it states the contract price to be $106,625.68, says that
the amount to be retained is $106,375. The printed form for
the application appears to have been designed for contract bonds
generally. It gives the contract price as $106,625.68. Defend-
ants did not represent that sum as the contract price. The grad-
ing contract did not set out those figures or any other figures
except the estimated yardage and the unit prices for the work.
The computation of premium must have been made by plaintiff's
agent Butters, who was not a witness. In connection with the
statement in the application of the contract price, which plain-
tiff, through defendants' own agent, inserted on his own infor-
mation, is the inquiry, ''If the contract price is per unit of
measure state here the probable total amount of the contract.''
No answer to this inquiry is inserted. Yet the contract, as plain-
tiff knew, was entirely on the basis of unit of measure both for
the excavation and the overhaul (though the length of the over-
haul, as the evidence shows, could not have been estimated).
The reasonable inference from this and the facts about to be
recited is that the bond was asked for and was granted on the
basis of a gross contract price, as estimated by plaintiff through
its agent, of $106,625.68. Another inquiry in the application
for ''the architect's or agent's estimate of the cost of the work,''
was not answered. The stipulation of the application on which
the suit is based is that defendants, ''on completion of the con-

tract,'' will pay "an additional premium at the same rate computed upon any increase of the original contract price as shown by the architect in charge of the contract.'' The application did not give the estimated yardage, though that was set out in the contract, which plaintiff's agent apparently examined for himself. Defendants did not compute, nor were they, so far as appears, informed of the basis of plaintiff's computation of, the rate of premium, or of the original contract price. There was no increase of the original price. That price was fixed by the contract at $.925 per cubic yard for excavation and 2 cents per cubic yard per hundred feet overhaul. That price was never increased. There was no architect in charge of the contract. There was an engineer, and one of the inquiries in the application was for the architect's or engineer's estimate of the cost of the work. This inquiry was not answered. Plaintiff, through its agent Butters, apparently got for itself the information that it desired. The stipulation sued on does not by its terms require defendants to pay additional premium for uncomputed or unexpected overhaul. We see no reason for giving to the clause sued upon the meaning that defendants should pay an additional premium, computed not upon increase of unit price, but upon unrepresented, possibly unexpected, amount of overhaul. The overhaul was merely noncomputed and noncomputable. No representation of the amount of the overhaul was given; no estimate made, or limitation prescribed. The application was prepared by plaintiff's agent, on information procured by himself, and plaintiff must take the responsibility for it, even though defendants did not read it. *Fitchner & Co. v. Fidelity Mut. Fire Assn.*, 103 Iowa 276. If, as plaintiff contends, plaintiff had the right to rely upon the application as written by its agent, and the agent had no authority to make a different agreement, the defendants have the right to rely upon the application as written and prepared by plaintiff's agent on his own investigation, estimates, and computations. The application was prepared by plaintiff, and doubts as to its meaning must be resolved against it.—*Affirmed.*

ALBERT, C. J., and STEVENS, DE GRAFF, and WAGNER, JJ., concur.