MABEL UMBARGER, Appellee, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant.

No. 42356.

204

April 3, 1934.

Malcolm Currie, for appellant.

J. B. Tourgee, and Salinger, Reynolds & Meyers, for appellee.

Stevens, J.— The accident resulting in the injuries to appellee for which damages were sought in the original action against Kilbourn occurred on September 7, 1931. With the details of this accident, the court is not now concerned. Judgment was obtained by appellee against Kilbourn for $2,550.30 on March 22, 1932. Execution having been returned unsatisfied, this action was commenced against appellant. The policy issued to Kilbourn by appellant, which is an Illinois company, is dated August 5, 1931. The sole defense urged in this action is based upon a provision of the policy which covers liability in case of "bodily injury and/or death suffered or alleged to have been suffered by any person, other than the Assured of the same household as the Assured or those in the service or employment of the Assured." The case was submitted to the court without a jury upon an agreed statement of facts.

The assured, Kilbourn, a man fifty years of age, was engaged in selling life insurance in the vicinity of Odeboldt, Iowa, for the New York Life Insurance Company. He called at the home of ap-

pellee, who resided with her husband and other members of her family on a farm near that place. The negotiations between Kilbourn and the Umbargers resulted in the issuance of a policy upon the lives of certain members of the Umbarger family. Kilbourn was rooming in a residence in Odebolt under circumstances not entirely satisfactory to him. Appellee had an unused room in her home which, as a part of the negotiations for a policy of life insurance, was rented to Kilbourn for $10 per month, with the understanding that the rent would be applied to the payment of the premium on the life policy referred to. The room rented by Kilbourn was on the second floor, but it was agreed that he might have space in a room on the first floor for certain purposes. Kilbourn moved into the room rented of the Umbargers about October 1, 1930, where he continued to reside until June of the following year. Kilbourn was married, and his family, consisting of his wife and two daughters, resided in Illinois. About the month of July, he tentatively decided to remove his family to Odebolt, but this was abandoned, and he returned for a time to the Umbarger home, where he lived under the arrangements already stated. In addition to the right to occupy the room on the second floor and a room on the first floor for certain purposes, appellee agreed to furnish Kilbourn meals at 25 cents each. This included meals to guests of Kilbourn upon specified conditions. He also was accorded the right to use the telephone upon condition that he pay all telephone charges for such service.

It is the contention of appellant that the exception contained in the policy and which is quoted above exempted appellant from liability for the injuries suffered by appellee upon the ground that she was a member of the same household as Kilbourn. Necessarily, this contention involves the interpretation and construction of the provision of the policy in question. Was appellee a member of the some household as Kilbourn? This is the ultimate question presented for decision.

Kilbourn, as the head of his own family, was a member of that household. If the foregoing statement be accurate, then the policy excepted injuries to Kilbourn, his wife, and the members of his immediate household. It may be assumed that W. L. Umbarger, the husband of appellee, was the head of the household of which she was a member. She was not upon any conceivable theory a member of the household of Kilbourn, so far as that term comprehends his

own household and family. The policy was issued prior to the date on which Kilbourn secured a room in the home of appellee in which to live. The purpose of the provision of the policy obviously was to relieve the company from any possibility or danger of collusion between the members of the household of which Kilbourn was a member and to obviate the natural impulse of one member of such family in case of injury to another to favor such injured member. The question is not, what did the insurer intend or mean by the clause in question? but what did the assured, as a reasonable person, understand the policy to mean? Watson v. Firemen's Ins. Co., 83 N. H. 200, 140 A. 169; Cartier v. Lumbermen's Mut. Casualty Co., 84 N. H. 526, 153 A. 6, 7. In the course of the opinion of the court in the case last cited, we find the following language:

"A household and a family are substantially synonymous terms, and family ties bind most closely. And it can be of no importance in this bearing what position the insured has in his household. The insured here would be as much disposed to favor his mother the household head, if he injured her, as she would to favor him if she were the insured. It is an attitude of common mutuality arising out of the general status and not one dependent upon the particular relationship of one member to another within the status. In sense and reason the insurer had no occasion in issuing a policy to one belonging to a household to make a distinction according as he was or was not its head. Such a difference would be wholly of caprice. Recognizing the increased hazard in cases of family accidents, the insurer purposed to avoid it generally, and the excepting clause makes the purpose apparent."

If the household referred to in the policy is synonymous with the family of the assured, it would seem quite conclusively to be limited to such household. The word "household" has been variously defined, depending to some extent upon the connection or relationship in which it is used. Sullivan v. Walburn, 154 A. 617, 9 N. J. Misc. 280; Mueller Furnace Co. v. Dreibelbis (Mo. App.) 229 S. W. 240; Alsup v. Jordan, 69 Tex. 300, 6 S. W. 831, 5 Am. St. Rep. 53; Buckley v. Porter, 160 Miss. 98, 133 So. 215; Pippin and Wife v. Jones and Company, 52 Ala. 161; Sauriolle v. O'Gorman, 86 N. H. 39, 163 A. 717; Rydstrom v. Queen Ins. Co., 137 Md. 349, 112 A. 586, 14 A. L. R. 212; Rogers v. Kuhnreich, 247 Mich. 244, 225 N. W. 622, 624; Ferbrache v. Grand Lodge, 81 Mo. App. 268.

The language of the contract, or of the statutes, involved in each of the cited cases no doubt influenced the construction adopted by the respective courts. The precise question here presented has not previously been before this court.

As ordinarily understood, a household consists of the members of the family composing it,—those sustaining some relationship of blood, or of ties which naturally or necessarily link them to such household. The limitation thus set is not exclusive.

The position of Kilbourn in appellee's household arose out of a contract by the terms of which he acquired the right to occupy a designated room on the second floor of the residence, and, for certain purposes, limited space in another room on the first floor. If present at meal time, he sat at the table with the family. Unlike the other members of the family, however, he paid to appellee 25 cents for each meal served to him. The very terms of the contract under which he entered the home of appellee segregated him from the family. He was not a guest, possessing the usual privileges and courtesies of the family, but occupied a position separate and distinct from the life and relationship of the family under a contract entered into by the parties for a money consideration. He lived in the same house but apart from the family. Defining the term "family" in Sheehy v. Scott, 128 Iowa 551, 104 N. W. 1139, 1140, 4 L. R. A. (N. S.) 365, we said:

"A single person is not a family, and therefore cannot claim a homestead, unless continuing in possession as surviving spouse. Fullerton v. Sherrill, 114 Iowa 511, 87 N. W. 419; Emerson v. Leonard, 96 Iowa 311, 65 N. W. 153, 59 Am. St. Rep. 372. 'Family' has been defined as a collective body of persons who live in one house under one head or manager. Tyson v. Reynolds, 52 Iowa 431, 3 N. W. 469; Parsons v. Livingston, 11 Iowa 104, 77 Am. Dec. 135. But this is not accurate, for strangers might thus band themselves together and live under the direction of a leader. To constitute one or more persons, with another, living together in the same house, a family, it must appear that they are being supported by that other in whole or in part, and are dependent on him therefor, and, further, that he is under a natural or moral obligation to render such support. Fox v. Waterloo Nat. Bank, 126 Iowa 481, 102 N. W. 424."

Although dealing with a wholly different subject, we said in Mooney v. Canier, 198 Iowa 251, 197 N. W. 625, that:

" * * * The mere fact that an adult stepson, 28 years of age, roomed and boarded at appellee's home, and was engaged in his own business, did not bring him within the so-called 'family rule' in such a way as to make the owner of the car liable for his unauthorized act in driving the same."

The language of the policy construed in Rogers v. Kuhnreich, supra, differed somewhat from the language of the policy before us. The exception there considered was to the father, mother, brother, sister, son, daughter, or *other immediate* members of the family of the owner. The court, in the course of its opinion, said:

"We are not persuaded that we should construe the words 'immediate members of the family' as used in this statute to include a boarder or roomer who is paying for such board or room, even though he be a collateral relative. It follows that the judgment for plaintiff must be reversed, but, as the Empson Act (Acts 1915, No. 217) was not invoked, we must grant a new trial. Defendant will have costs of this court."

It seems to the court that there is a distinct ambiguity in the language of the policy before us. Whom did the company intend to include in the language under consideration? Who is meant by the words, "the members of the same family as the assured"? How would the assured, as a reasonable person, naturally and ordinarily understand and interpret this language? Clearly, if it was intended to except the members of Kilbourn's family, it can have no application to the case before us. If it was intended to except liability for injury to any member of a household in which Kilbourn temporarily became the occupant of a room for hire, then quite obviously appellee has no cause of action against the appellant. The conclusion would seem to be inevitable that appellee was not a member of the same household as Kilbourn, and that he did not sustain such relationship to the family or any member thereof as to clearly imply that he became, or was, a member of the household of appellee. Just what meaning was intended by the company by the language used is by no means certain and definite. Its scope is left to interpretation and is not without ambiguity.

The language employed was chosen by the company and must be construed most strongly against it and in favor of appellee. Kascoutas v. Federal Life Ins. Co., 193 Iowa 343, 185 N. W. 125,

22 A. L. R. 294; Crowe v. Insurance Co., 202 Iowa 43, 209 N. W. 406; Iowa Bond & Casualty Co. v. Cram & Sons, 209 Iowa 424, 228 N. W. 24.

Other questions are discussed by counsel, but, as it is the conclusion of the court that the language of the policy is, at best, uncertain and ambiguous in meaning, and that to hold that appellee was a member of the same household as Kilbourn, would be to give a broader meaning and application thereto than was intended, or that is justified by the facts, we need not consider or discuss them. We are clear that the defense alleged to appellee's cause of action is not available to appellant in this case. It follows that the judgment must be, and it is, affirmed.—Affirmed.

CLAUSSEN, C. J., and MITCHELL, ANDERSON, and KINTZINGER, JJ., concur.