ALLIED MUTUAL CASUALTY COMPANY, plaintiff-appellee, v. PATRICK DAHL et al., d/b/a Wolf for Congress Club, defendants-appellees; VINCENT GOEDKEN, father and next friend of Ernest V. Goedken, a minor, and individually, appellants.

No. 50955.

(Reported in 122 N.W.2d 270)

June 11, 1963.

Clewell, Cooney & Fuerste, of Dubuque, for defendants-appellants.

C. F. Neylan, of Elkader, for defendants-appellees.

Barnes, Wadsworth, Elderkin, Locher & Pirnie, of Cedar Rapids, for plaintiff-appellee.

STUART, J.—Ernest Goedken, a minor and one of the defendants, received a serious personal injury while riding in the back end of a panel truck owned by the defendant Wolf, driven by the defendant Dahl and insured by the plaintiff, Allied Mutual Casualty Company. An action for damages was commenced on behalf of Ernest V. Goedken against Wolf and Dahl. Plaintiff-insurer then instituted this action for a declaratory

judgment against Wolf, Dahl, Ernest Goedken and his father and next friend Vincent Goedken alleging Dahl and Ernest Goedken were both employees of Wolf and that Wolf's insurance policy does not provide coverage to either Wolf or Dahl under these circumstances. The trial court so held and the Goedkens have appealed. Neither Wolf nor Dahl has taken an appeal.

The accident occurred October 17, 1958, on the grounds of the National Corn Picking Contest near Cedar Rapids in Linn County, Iowa. Ernest Goedken was attending the event with some of his teen-age friends. As they were walking by a tent which was being used as headquarters for the Democratic Party, Patrick Dahl stopped them and asked if they would like to earn some extra money by placing handbills on behalf of the candidacy of Leonard G. Wolf for Congressman on the cars parked in a lot some 500 feet or more away.

The boys, including Ernest Goedken, expressed interest and Mr. Dahl agreed to pay them one dollar apiece for doing the job. When he had a group of about ten boys, he told them to get into a panel truck which bore Mr. Wolf's name and contained some 50,000 pieces of his literature. Mr. Dahl drove the boys to the parking lot where they distributed Mr. Wolf's literature under his direction and supervision. As Mr. Dahl and some of the boys, including Ernest Goedken, were standing near the truck waiting for the others to finish, he asked them if they would like to pass out bills at another lot at the other end of the grounds about 1½ miles away. The boys stated they would have to have more money. Dahl said he would have to go back to the Democratic tent and get some more money. The boys got into the pickup truck and Mr. Dahl headed back to the tent. Ernest Goedken was injured on this trip when the rear door of the panel truck, which was left open, hit a solid object, closed and pinned his leg between the door and the frame of the truck. The injury was severe because Mr. Goedken is a hemophiliac.

Mr. Dahl did not learn of the injury to Ernest Goedken until he returned to the truck from Democratic headquarters. He made arrangements for him to be taken care of and then took the other boys to the second lot where the bills were distributed. The boys did not know in advance what they were going to be

paid for distributing the literature on the second lot. Mr. Dahl wanted to see how many were going to stay and finish and intended to give them what he thought they were worth. There was evidence from which the trial court could find the boys were not paid anything until the second lot was completed. There was also evidence from which the court could find there was no doubt about Mr. Dahl getting the extra money for the second lot and that it was just a matter of picking it up.

After the bills were distributed Mr. Dahl returned to the vicinity of the Democratic tent and gave Ernest Goedken $2.00 because he "felt sorry for him because he wanted to go on and do the other lot".

Under these facts, the insurer claims the driver Dahl is not protected under the definition of "insured" contained in the policy, which, in its pertinent parts, reads as follows:

"(a) With respect to insurance for bodily injury liability * * * the unqualified word 'insured' includes * * * any person while using the automobile * * * [with permission]. The insurance with respect to any person * * * other than the named insured * * * does not apply * * * to any employee with respect to injury of another employee of the same employer injured in the course of such employment in an accident arising out of the use of the automobile in the business of such employer."

The insurer also claims the owner Wolf is not protected by virtue of an exclusion contained in the policy as follows:

"This policy does not apply * * * to bodily injury of any employee of the insured arising out of and in the course of (1) domestic employment by the insured, if benefits therefor are in whole or in part either payable or required to be provided under any workmen's compensation law, or (2) other employment by the insured."

The trial court found that both Dahl and Goedken were employees of Wolf and therefore the policy of insurance did not protect either Wolf or Dahl.

Counsel for Ernest Goedken concede findings of fact by the trial court in a law action are binding upon this court, if supported by substantial evidence. No issue is raised on this appeal of the court's finding that Dahl was an employee of Wolf. They

contend, however, there is no evidence in the record from which the court could find: (1) Goedken was an employee as no contract of employment existed at the time of the accident; (2) the transportation furnished at the time of the accident was expressly or impliedly a part of the employment contract; (3) the particular trip on which the accident occurred was in the "course of employment". In connection with (3) they also claim the insurer did not plead and the court did not find the accident occurred in the "course of employment". We will discuss these contentions in the above order, which does not correspond with the numbered assignments of error.

I. In his reply argument appellant contends he was not an employee at the time of the accident because the duty of passing out handbills at the first lot had been completed and no new employment contract had been agreed upon as the boys had not seen the second lot and did not know what they would be paid. The trial court found: "Goedken was in the employ of Wolf at least from the time they left the first lot and at the time of the injuries. In fact the court doubts that there was a break in the employment when the billing of the first lot was completed. The court feels there was a continuation of the employment at the suggestion of Dahl and the assent of the boys."

There is substantial evidence to support the trial court's findings. All discussion and negotiations, which were quite brief and informal, appear to have taken place before they left the first lot. Mr. Dahl testified: "This discussion took place when we were nearly finished with the lot and when some of the boys were waiting for a few to finish up. At that time we came to this agreement. This agreement was that I would get some more money to show them that I would pay them in good faith and then we would go down and do the other lot." The boys showed their assent by getting back into the pickup truck. There is no evidence of any further discussion. The boys, at that time, knew as much about the wages they were to receive for distributing the bills on the second lot as they knew until they were actually paid when the work was completed. The fact the boys were not paid anything until the second lot was completed tends to support the trial court's conclusion that the employment was con-

tinuous and uninterrupted. In any event, there is evidence that Goedken was rehired prior to the trip back to the Democratic tent for the money to pay the boys.

II. Appellant argues that even if we assume there is evidence to support a finding that Goedken was an employee of Wolf at the time of the accident, there is no evidence the transportation being furnished the boys to and from their work as bill distributors was either an express or implied obligation of the contract of employment. This is important in determining whether the injury arose out of and in the course of employment.

While these provisions in liability insurance policies have not been before this court for construction prior to the instant case, this proposition has been considered many times in other jurisdictions. The court in the case of Farm Bureau Mutual Automobile Insurance Co. v. Smoot, 95 F. Supp. 600, 603, 604, states the general rule to be:

"The weight of authority is to the effect that an employee making use of transportation customarily and gratuitously furnished by the employer, in the absence of an express provision for same, is not acting in the course of his employment unless a duty to transport can be implied from the attendant circumstances in the contract of hiring. Konopka v. Jackson County Road Commission, 270 Mich. 174, 258 N.W. 429, 97 A. L. R. 552; In re Donovan, 217 Mass. 76, 104 N.E. 431. This duty may be implied where it is shown that the transportation was provided as an incident to procuring the services of an employee whose home is a great distance from the place of work. Johnson v. Aetna Casualty & Surety Co., 5 Cir., 104 F.2d 22; Southern States Mfg. Co. v. Wright, 146 Fla. 29, 200 So. 375. It may also be implied where the transportation provided by the employer is shown to have been a necessary incident to the employment because it was the only practical means by which the employee could travel to and from the place of work. Venho v. Ostrander Railway & Timber Co., 185 Wash. 138, 52 P.2d 1267; Lamm v. Silver Falls Timber Co., 133 Ore. 468, 277 P. 91, 286 P. 527, rehearing denied, 133 Ore. 524, 291 P. 375. * * * At any rate, it must be shown that the transportation so furnished was a necessary incident of the employment rather than

a mere favor not in furtherance of the employer's business. American Mutual Liability Ins. Co. v. Curry, 187 Ga. 342, 200 S.E. 150; Morucci v. Susquehanna Collieries Co., 297 Pa. 508, 147 A. 533."

Applying these principles to the case at bar, we cannot say as a matter of law the transportation to the second lot was not a necessary incident of the employment. The truck in which the boys were riding contained the literature which they were to distribute. The second lot was a mile and one half away. The wages were so small the trial court could conclude the boys would not walk that far for such a wage.

All of the cases cited by either party dealing with transportation involved transportation either before or after the work for the day. In the instant case the transportation was between jobs, whether you consider the two jobs separate or as one continuous job. Dahl ordered the boys to get into the truck. It is our conclusion the trial court could find under the record the transportation to and from the second lot was an incident of the employment and that it was within the contemplation of the parties such transportation would be furnished.

III. Appellant most strenuously urges, even if Goedken was an employee and the employment contract included transportation to and from work as a necessary incident thereto, the trip on which the accident occurred was for the sole purpose of obtaining money and had nothing to do with the performances of the work and therefore Goedken was not in the course of employment at the time.

The accident occurred when the boys were riding in the truck to the Democratic headquarters for Dahl to get money to pay them. The record is silent on the relative location of the Democratic tent and the two lots. Although the evidence discloses the two lots were at opposite ends of the area, we cannot assume the tent was directly on the route.

We have carefully examined the cases cited by appellant. With the exception of the case of American Fire and Casualty Co. v. Bramlett, 253 F.2d 218, appellant's cases are concerned with policies which contain the phrase "while engaged in" the business or employment of the insured. The particular phrase

in question in the instant. case is "arising out of and in the course of employment".

We believe this is an important distinction. The phrase "while engaged in" connotes action and as the boys were not actively performing their job of passing out bills, they would not be "engaged in" the business of the employer. The phrase "arising out of and in the course of employment" is a phrase borrowed from the Workmen's Compensation Act and has acquired a broader meaning. The courts recognized the distinction in the case of B. & H. Passmore Metal & Roofing Co. v. New Amsterdam Casualty Co. (1945), 147 F.2d 536, 538, cited in appellant's brief. The court says:

"The Casualty Company relies upon decisions of the Oklahoma Supreme Court holding that an injury to an employee sustained while he is returning from work in a conveyance furnished by his employer is an injury 'arising out of and in the course of his employment.' But, in those decisions, the Supreme Court was construing a provision of the Oklahoma Workmen's Compensation Law and not a private contract, and it has repeatedly held that such law is a remedial statute and should receive a liberal construction in favor of the injured employee."

After pointing out that an exclusion clause in a policy of insurance must be strictly construed against the insurer, the court goes on to say: "Moreover, the exclusion clause 'engaged in the business, * * * of the insured' differs materially from the clause 'arising out of and in the course of his employment.' The word 'engaged' connotes action."

This court also concerned itself with the active nature of the phrase "engaged in" in the case of United Fire & Casualty Co. v. Mras, 243 Iowa 1342, 1346, 1347, 55 N.W.2d 180, 182, in which many of the cases cited by appellant are discussed. The court said:

"In the case at bar the exclusion clause states the provisions of the policy shall not apply when the accident occurs 'while the assured * * * is engaged in custom farming.'

"As in the Nichols case the language in question refers to

the activity at the very time of the accident. Such a provision has been called an activity clause. Provisions in similar language with reference to military or naval service in time of war are often called 'status clauses', because there the primary question is generally the status of the insured. Boatwright v. American Life Ins. Co., 191 Iowa 253, 180 N.W. 321, 11 A. L. R. 1085, involved such a provision. Similar provisions based upon causation are referred to as 'result clauses.' Eggena v. New York Life Ins. Co., 236 Iowa 262, 270, 18 N.W.2d 530. The provisions may be a combination of 'status' and 'result.' See Swanson v. Provident Insurance Co., 194 Iowa 7, 188 N.W. 677; annotation 168 A. L. R. 689, 690. In the case at bar the exclusion provision is neither a status clause nor a result clause. It is clear the language 'while engaged in custom farming' does not refer to the insured's general status as a custom farmer. Nor does the exclusion clause contain language involving causation or result. It is clearly an activity clause.

"B. & H. Passmore Metal & Roofing Co. v. New Amsterdam Cas. Co., 10 Cir., Okla., 147 F.2d 536, 538, was an action to determine the rights of the parties under an exclusion clause which provided the policy did not apply to injury to or death of any employee while engaged in the business of the insured. It was there held an employee who was killed while returning to the shop, in the company's truck, was not engaged in the business of the assured, within the meaning of the exclusion clause. Pointing out that the exclusion clause differs materially from the clause in the Workmen's Compensation law, ' "arising out of and in the course of his employment" ', the decision states: 'The word "engaged" connotes action.'

"In Francis v. Scheper, 326 Mich. 441, 447, 40 N.W.2d 214, 217, the exclusion clause in the policy excepted those 'engaged in the employment' of insured. An employee at a fixed wage per hour, plus transportation, was injured while being so transported after working hours. The decision states:

" 'The phrase, "engaged in the employment", can fairly be construed as meaning, active in the work plaintiff was employed and paid to do. It was incumbent on defendant casualty company, who drafted the policy, in order to escape liability under

the circumstances of this case, so to draft the policy as to make clear the extent of nonliability under the exclusion clause.' "

The case of American Fire and Casualty Co. v. Bramlett, supra, is the only case cited by appellant which has an exclusion clause containing the phrase "arising out of and in the course of employment". Because of the informal and casual nature of the employment contract and the fact the injury did not occur during actual transportation to or from work, it is also the closest case on the facts cited by either party. The injured party in that case was cotton picker hired casually who was picked up at her home in insured's truck and transported four miles to the field where she was to pick cotton. Nothing was said about the transportation or were the wages agreed upon. Her pay was based on the pounds of cotton picked. As the trial court said the contract was "99.44% implied". The accident occurred after work for the day when the injured party fell from the running board of the truck on which she was standing to help keep the truck from turning over as it was driven out of a ditch, prior to the trip back from work.

The difficulty with this cited case, insofar as the appellant is concerned, is that the findings of fact in the lower court were favorable to injured party. The insurer in the Bramlett case had the burden of establishing as a matter of law the injured party was an employee, while the injured party in the instant case is faced with the burden of demonstrating as a matter of law that he was not an employee within the exclusion clause. The Bramlett case is actually authority for appellee as that court held there were issues for the trier of fact on all propositions quite similar to those urged here.

The court said: "At the outset it is appropriate to point out that the facts, i.e., what was said, or done, are simple indeed. But it is their simplicity which inevitably makes most, if not all, a jury question as a trier, Court or jury, seeks to draw inferences on the nature of the agreement, the scope of the implied obligations, or the many other legal incidents which have now become so important but which, in fact, never passed through the actors' minds in this little homely transaction to pull cotton bolls." Page 219 of 253 F.2d.

On the question of the sufficiency of the evidence to support a finding the transportation was not furnished as part of the employment contract, the court said:

"We may assume that the jury could have inferred that transportation was to be furnished as a part of the contract and had it done so, the finding would have been unassailable. But *surely* from *this elus*ive *informal* transaction a choice was open." Page 221.

In the elusive and informal transaction involved in the instant case a choice was open to the trier of fact. The court chose to find the transportation was furnished as a part of the contract. This finding is as unassailable as an opposite finding would have been.

The court in the Bramlett case also held the evidence presented factual issues on questions as to whether the injury was one arising out of and in the course of employment and whether the accident occurred during transportation to and from work. Both issues are also involved in the case at bar. We hold the evidence presented factual issues in the instant case. The triers of fact reached opposite conclusions in the two cases, but the issues were there to be resolved by them. None of the cases cited by the appellant goes so far as to say the particular accident in question did not arise out of and in the course of employment as a matter of law. We cannot say in this case, as a matter of law, that there was no evidence in the record to support the court's findings.

Although many of the facts are uncontradicted there is still a question for the trier of fact when reasonable minds might draw different inferences from them. (No citation of authority is necessary, see rule 344(f)17.) The trial court could reach the conclusion that the transportation to the second lot commenced when the truck left the first lot. Evidence that the purpose of the trip was to pick up money to pay the boys at the conclusion of their work would support the inference the trip was within the course of employment and not solely for the benefit of the employer. They were going on to the second lot after Dahl

picked up the money. Varying inferences could properly be drawn from the facts by the trier of fact.

■ ■ IV. Neither party cited workmen's compensation cases determining what accidents "arise out of and in the course of employment", nor do we consider them authority in cases involving the interpretation of clauses in insurance policies. The differing rules of construction applicable to each type of case preclude either type from being authority for the other. As has often been said by this court, the Workmen's Compensation law, being a remedial statute, is to be liberally construed in favor of the employee. Barton v. Nevada Poultry Co., 253 Iowa 285, 110 N.W.2d 660; Crouse v. Lloyd's Turkey Ranch, 251 Iowa 156, 100 N.W.2d 115. Unless the language in an insurance policy is clear and unambiguous, it is to be strictly construed against the insurance company. Rogers v. Maryland Casualty Co., 252 Iowa 1096, 109 N.W.2d 435; Umbarger v. State Farm Mutual Auto. Ins. Co., 218 Iowa 203, 254 N.W. 87. The fact that a phrase may have acquired a legal meaning for the purposes of the compensation Act does not require such liberal construction be extended to other fields of law in which the construction should be more strict.

■ ■ V. Appellant's contention insurer did not plead the injury arose out of and in the course of employment does not aid him on the appeal. While it is not spelled out specifically, the provisions of the policy containing these phrases are included in the petition and it is alleged there is no liability under these provisions. After issue is joined without an attack upon a doubtful pleading or raising any points of law appearing upon the face of the pleading, it will be liberally construed in order to effectuate justice between the parties. The pleader will be accorded the advantage of every reasonable intendment, even to implications necessarily inferred, regardless of technical objections or informalities. Wilson v. Corbin, 241 Iowa 593, 41 N.W.2d 702; Reed v. Harvey, 253 Iowa 10, 13, 110 N.W.2d 442, 443, 444.

■ ■ VI. The appellant did not ask that the findings of the trial court be enlarged. His claim the court did not find the accident occurred in the course of employment is not sustained.

Findings of a trial court are to be broadly and liberally construed, rather than narrowly or technically. In case of doubt or ambiguity, findings will be construed to uphold, rather than to defeat, the judgment. Whenever, from the facts expressly found, others may fairly be inferred which will support the judgment, such inference will be drawn. Rank v. Kuhn (1945), 236 Iowa 854, 20 N.W.2d 72; Hobbs v. Homes, Inc. (1955), 246 Iowa 1195, 71 N.W.2d 592. The trial court found "Goedken was in the employ of Wolf" at the time of the injuries and that the policy provisions do not protect either Wolf or Dahl. As the policy would apply unless the accident arose out of and in the course of employment, it, properly, can be inferred from his judgment and decision that the trial court found the accident did arise out of and in the course of employment.

The judgment of the trial court is hereby—Affirmed.

All JUSTICES concur.