CHARLES A. WALTERS, JR., Appellee, v. MUTUAL BENEFIT HEALTH
& ACCIDENT ASSOCIATION, Appellant.

No. 39372.

APRIL 2, 1929.

REHEARING DENIED JUNE 24, 1929.

*John R. DeWitt, P. E. Horan, G. J. Cleary,* and *Parrish,
Cohen, Guthrie, Watters & Halloran,* for appellant.

*D. E. Stuart* and *H. P. Finerty,* for appellee.

GRIMM, J.—The policy in this case was issued January 19,
1926, and was kept in force until December 31, 1926, and was
later reinstated on January 14, 1927.   The insured, Charles A.

 Walters, resided in Council Bluffs, and during the last seven years of his life he was employed at the Griffin Wheel Works, in that city, as a machinist helper and repair man. It is claimed by the plaintiff that, sometime in the month of December, 1926, Walters sustained injuries through accidental means, which resulted in his death, February 7, 1927. It is not claimed that anyone saw the accident. A witness, Bonham, testified that he met Walters on the street, sometime before Christmas of 1926, when Walters showed Bonham a bump about the size of one half of a hen's egg, located approximately one inch above and a little back of Walters' ear, and at that time, Walters told him ''he had been hit, down at the factory.'' Walters continued to work as usual until January 13, 1927, when he called on a physician in Council Bluffs, when, according to the physician, he found that Walters was suffering a partial paralysis on the right side, and that he had a pin-point pupil in the left eye. There was no evidence of any traumatism on the head, and the only apparent symptoms of trouble were this condition in his eye and his complaint about the semi-paralytic condition of his right side. He went to the hospital almost immediately. The condition of the eye grew worse, and it was afterwards removed by an eye specialist. Shortly thereafter, Walters complained that the fingers of his right hand became numb, and finally this numbness involved the whole right arm, and afterwards the right leg. His condition grew steadily worse until February 6th, when he died. An autopsy was performed. There is some disagreement among the doctors as to what was found as a result of the autopsy. There is a disagreement among the doctors as to whether there was any fracture of the skull. An abscess was found, about a quarter of an inch from the outer wall of one side of the brain.

I. The plaintiff complains that, because of the form of the answer filed by the defendant, the general denial therein contained will not be considered, and all the material allegations of the petition must be deemed admitted, and that the defendant must stand upon its special defense, alone. On the 26th of August, 1927, the defendant filed an answer, in substance admitting (a) its corporate existence, and (b) that it issued the policy in question. There is also a general denial. On the 26th of September, 1927, with leave of court, the defendant filed an

amended answer, which contained, in substance: First, (a) an admission of its corporate organization, (b) the issuance of the policy; second, the special defense that the insured died of a brain abscess, and by reason thereof there was no liability. (c) "For further answer, the defendant denied each and every other allegation in plaintiff's petition."

A motion was made, to strike from the amended answer this special defense, on the ground of its immateriality, and that it constituted no defense, and for the further ground that the payments provided in Part K of the policy constituted a provision for benefits additional to the death benefits provided generally in the policy. The abstract does not so show, but we assume that the motion to strike was overruled. No motion was made to require the defendant to separate its answer into counts or divisions. *Miller v. Johnson*, 205 Iowa 786, cited by appellee, does not apply. The pleading by appellant, that the death of the insured was due to a brain abscess, and that, by the terms of Part K of the policy, no death benefit was recoverable, was not in conflict with appellant's general denial, but, on the contrary, was in strict harmony with it, and therefore does not come within the statute or the rule as to pleading contended for by the appellee.

II. The motion for new trial in this cause contains nine specific grounds. In our view of the case, it is necessary only to discuss that portion of the motion pertaining to recovery under the death benefit portion of the policy.

The contract in controversy in this case, Exhibit 1, contains an insuring clause, as follows:

"Mutual Benefit

"Health and Accident

"Association

"Omaha

"(Herein called Association)

"Does Hereby Insure

"Monthly Benefits ........................................$100.00
"Maximum Monthly Benefits ..................$200.00

"Death Benefit ...............................................$2,000
"Maximum Death Benefit ..........................$4,000

"Insuring Clause.

"Charles A. Walters (herein called the insured) of city of

Council Bluffs, state of Iowa, against loss of *life, limb, sight,* or *time,* resulting directly and independently of all other causes, from personal bodily injuries sustained through purely accidental means (suicide, sane or insane, is not covered), and against loss of time on account of disease, as specified in the following schedules, respectively, *subject, however, to all the provisions and limitations hereinafter contained."*

(All italics in this opinion are ours.)

It will be noted that the contract insures Walters against loss of life, limb, sight, or time from accident or disease, "as specified in the following schedules, respectively, *subject, however, to all*  *the provisions and limitations hereinafter contained."* By the italicized language attention is definitely called in the insuring clause to the restrictions which follow in the policy. There is nothing ambiguous about this language. It definitely specifies that the insurance against loss of life, limb, sight, or time resulting from accident or disease is only issued as definitely restricted in subsequent parts of the policy.

Immediately after the foregoing appears the following:

"ACCIDENTAL INDEMNITIES.

"Specific Losses.

"Part A.

"If the insured shall, through accidental means, sustain bodily injuries as described in the insuring clause, which shall, independently and exclusively of disease and all other causes, *immediately, continuously* and *wholly* disable the insured *from the date of the accident* and result in any of the following *specific losses* within *thirteen weeks,* the Association will pay:

For Loss of Life ................................................................$2,000.00"

(Here follows a schedule as to amounts paid for loss of eyes, hands, feet, etc.)

It will be noted from the foregoing that, in accordance with the plain and unambiguous language of the policy, insurance against specific losses arises only when, by accident, the specific losses *"immediately, continuously and wholly disable the insured from the date of the accident."* Part B provides an annual increase of benefits. Part C provides $100 per month for life for

total accident disability. Part D provides $40 per month for partial accident disability. Part E provides double indemnity, provided that the injury is received under certain conditions, as, for instance, riding as a passenger within the inclosed part of any railway or street railway passenger car. Part F provides a medical attendance fee. Part G provides an additional $200 aid under certain specified conditions. Parts H, I, J, and K are grouped under the general heading "Illness Indemnities." Part H reads as follows:

"Part H.
"Confining Illness One Hundred Dollars Per Month for Life.

"The Association will pay, for one day or more, at the rate of one hundred ($100.00) dollars per month for disability resulting from *disease,* the cause of which originates more than thirty days after the date of this policy, and which confines the insured continuously within doors and requires regular visits therein by legally qualified physician; provided said disease necessitates total disability and total loss of time."

Part I reads as follows:

"Part I.
"Non-confining Illness Fifty Dollars Per Month.

"The Association will pay, for one day or more, at the rate of fifty ($50.00) dollars per month, *but not exceeding one month,* for disability resulting from disease, the cause of which originates more than thirty days after the date of this policy, and which does not confine the insured continuously within doors but requires regular medical attention; provided said disease necessitates total disability and loss of time."

Part J provides benefits payable while confined to the hospital. Part K reads as follows:

"Part K.
"Covered as Sickness.
"*All diseases are covered by this policy.*

"Any *accidental injury, fatal or otherwise,* resulting in hernia, boils, carbuncles, felons, abscesses, ulcers, *infection,* septicæmia, ptomaine poisoning, diabetes, fits, peritonitis, apoplexy, sunstroke, freezing, hydrophobia, sprained or lame back, *shall be*

*paid for as provided in Part H or I, anything to the contrary notwithstanding."*

It will be noted that, under the provisions of Part K, an accident which results in various conditions and ailments, such as infection, septicæmia, abscesses, sprained or lame back, "shall be paid for as provided in Part H or I, anything to the contrary notwithstanding." Reference to Part H discloses a provision for benefits for "confining illness," while Part I provides a benefit for "non-confining illness." It will also be noted that this limitation applies whether the accident proves fatal or otherwise.

The trial court held, construing this contract, as follows:

"It is the opinion of the court that this clause is an extension of the policy, rather than a limitation; that it is intended to extend the terms, rather than to limit them."

The court held the plaintiff entitled to recover the full amount of the policy. According to the court's construction of the contract, the beneficiary thereunder, in case of death, is entitled: First, to the $2,000 death benefit; and second, depending upon whether the illness between the date of the accident and death was confining or non-confining, to an additional sum for the period between the accident and the date of the death.

In placing an interpretation upon an insurance contract, it is well settled that, if its terms are ambiguous, that construction will be given it which is most favorable to the insured. On the other hand, this rule does not warrant an arbitrary judicial construction. The language of the article in controversy must be taken in its ordinary and usual sense, and must be given such interpretation as was probably in the contemplation of the parties when the policy was issued.

It is claimed by the defendant that, inasmuch as the insured worked regularly at his usual employment for many days after the accident, before going to the hospital just prior to his death, there can be no recovery as for a death benefit, because of the language contained in Part A, hereinbefore quoted, which it is claimed provides that, in order to recover, the injuries resulting from the accident must "immediately, continuously, and wholly disable the insured *from the date of the accident."*

It is claimed by the plaintiff that the accident in this case

occurred on or about the last week of the month of December, 1926. There is evidence in the record to warrant a finding that it occurred earlier than that date. It appears from the record that, with the exception of January 3d and 4th, when the insured had tonsilitis, he worked regularly every working day during which the plant was open and operating, up to January 14, 1927. There is some testimony to the effect that, on some of the days in the latter part of December and prior to January 14th, he was not feeling as well as usual, but he lost no time from his work. None of his associates at his place of work discovered anything out of the ordinary about him. Under these circumstances, are we to hold that the insured sustained bodily injuries which "immediately, continuously, and wholly disabled the insured from the date of the accident?" It is contended by the plaintiff that the accident referred to, which resulted in a "bump" on the side of the insured's head, caused a slight fracture of the skull, a slight lesion in the brain, and that finally, as a part of the chain of occurrences following the accident, an abscess developed in the brain, from which the insured died. On the assumption, for the sake of the argument, that this has been conclusively proven in the record, is there a liability as for death, under the contract held by the insured? It is claimed by the plaintiff that the word "immediately" does not mean "instantaneously," but does mean "the period within which nature acts to work a total disability from an injury," or "for the period that nature halts before inflicting penalties for her violated laws." We are cited to the case of *Order of United Com. Trav. of Am. v. Barnes*, 72 Kan. 293 (80 Pac. 1020). In the *Barnes* case, the court construes a by-law of the Order of United Commercial Travelers, containing this language:

"If said member shall sustain bodily injury by means aforesaid which shall, independently of all other cases, *immediately, wholly and continuously* disable and prevent him from the prosecution of any and every kind of business pertaining to his occupation."

In the *Barnes* case, a wholesale grocer swallowed a metal pin, which at once caused him much distress. However, he went to his place of business nearly every day from July 23d to August 4th, when he became wholly disabled. During this time, he as-

sisted in buying goods and selling them for future delivery, and attended to business in the usual manner, with the exception of two or three days. One of the difficulties in construing the *Barnes* case arose from either attempting to hold that "immediately" meant "instantaneously," or "within a reasonable time." The court said:

"If the conditions of the contract can be extended, so that the word 'immediately' does not mean 'instantaneously,' 'at once,' and 'without delay' (as all courts agree), then a greater stretch of the conditions cannot be said to be unreasonable in allowing for the period that nature halts before inflicting penalties for her violated laws. In such cases the disability is immediate, within the meaning of the policy."

We think that case is clearly distinguishable from the case at bar; for, in the instant contract, "immediately" is definitely defined by the use of the words "from the date of accident." The *Barnes* case was decided in 1905. In 1926, the same court decided *Penquite v. General Acc., F. & L. Assur. Corp.*, 121 Kan. 174 (246 Pac. 498). The case came before the court on an appeal from a judgment sustaining a demurrer to the plaintiff's petition. The clause in the policy contained the words "from date of accident." The court says:

" 'From date of accident' has but one meaning. It does not mean a day or week or month after the accident. It refers to the particular 'date' when the accident (injury) occurred. * * * The language of the policy is plain and unambiguous. It is clear that the plaintiff was not wholly disabled and prevented from performing the duties pertaining to his occupation from the date of the accident. The defendant was within its rights in making its liability depend upon the fact as to whether or not the plaintiff was immediately disabled by the injury from performing the duties pertaining to his occupation. It inserted in the policy these conditions, and doubtless fixed its rate of premium in accordance with the risk it assumed. To these conditions the plaintiff gave his assent when he accepted the policy. If he was not disabled from the date of the accident, he cannot hold the defendant liable."

The court then distinguishes the *Barnes* case and other cases

resting on the *Barnes* case from the *Penquite* case, in which the policy contained the words "from date of accident."

In July, 1928, the *Penquite* case was before the Kansas court again. *Penquite v. General Acc., F. & L. Assur. Corp.*, 126 Kan. 511. When the mandate reached the trial court, the plaintiff, by leave of court, amended his petition by asking for weekly indemnity for total disability for a different period of time from that covered in the original petition. There was a judgment for plaintiff, and the case was reversed. The court says, in commenting on the words "total disability from the date of accident:"

"This difference in language used takes this case out of the class of cases giving an interpretation to the word 'immediately.' No interpretation is needed for the words 'from date of accident.' Unless there is a total disability from the date of the accident, there is no liability, even if the disease was progressive. As was said in the opinion of this case when here before, the plaintiff gave his assent to these conditions when he accepted the policy, and possibly the rate of premium was in accordance with the risk assumed."

See, also, for cases interpreting clauses containing the words "from date of accident," *Robinson v. Masonic Protective Assn.*, 87 Vt. 138 (88 Atl. 537) ; *Southern Sur. Co. v. Penzel*, 164 Ark. 365 (261 S. W. 920) ; *Thompson v. General Acc. F. & L. Assur. Corp.*, 155 La. 31 (98 So. 746).

It has been held, in a case where the plaintiff worked for approximately seven days after the injury, under a policy which did not contain the words "from date of accident," that plaintiff cannot recover. *Letherer v. United States H. & Acc. Ins. Co.*, 145 Mich. 310 (108 N. W. 491). In a case where the insured hurt his knee while jumping from his room in a burning hotel, on January 30th, he continued working as a locomotive engineer until February 23d, and it was held, under a policy which did not contain the words "from date of accident," that plaintiff could not recover. *Masonic Protective Assn. v. Farrar*, 73 Ind. App. 19 (126 N. E. 435). In a case where an accident happened on the 6th of August, the plaintiff continued at his work several days, and the court said:

"It seems apparent that the accident was not of such character as to be within the terms of the policy. It was not followed by immediate, continuous, and total disability. The word 'immediate' should not be said to mean 'instantaneous;' yet it has a meaning, applied to time, which limits that time, and several days' labor at one's usual avocation before a total disability ensues, is certainly beyond the limit" (citing cases). *Mullins v. Masonic Protective Assn.*, 181 Mo. App. 394 (168 S. W. 843).

See, also, *Letherer v. United States H. & Acc. Ins. Co.*, 145 Mich. 310; *Preferred Masonic Mut. Acc. Assn. v. Jones*, 60 Ill. App. 106; *Williams v. Preferred Mut. Acc. Assn.*, 91 Ga. 698; *Merrill v. Travelers' Ins. Co.*, 91 Wis. 329; *Genna v. Continental Cas. Co.*, 167 Ill. App. 413; *Laventhal v. Fidelity & Cas. Co. of New York*, 9 Cal. App. 275. In the latter case, the court said:

"The policy is but a contract, and, like all other contracts, it must be construed from the language used; when the terms are plain and unambiguous, it is the duty of courts to hold the parties to such contract. The defendant agreed, in case the plaintiff by accident should receive a bodily injury, that, 'if said injury shall immediately, continuously and wholly disable and prevent the insured from performing every and any kind of duty pertaining to his occupation, the company will pay. * * *' Plaintiff received a bodily injury. The injury, however, did not immediately and wholly disable and prevent the plaintiff from performing every duty pertaining to his occupation. The language is plain, and anyone can at once see that the plaintiff was not immediately disabled and prevented from performing the duties or part of the duties pertaining to his occupation. The defendant had the right to make its liability depend upon the fact as to whether or not the plaintiff was immediately disabled by the injury from performing every duty pertaining to his occupation. *It had the right to take the question out of the category of such uncertainties as might be raised by experts, or oral testimony as to whether or not the final total disability was caused by the injury or by other complications or conditions.* It made its insurance policy with these conditions, and evidently fixed its rate or premium in accordance with the risk assumed. To these conditions the plaintiff gave his assent when he accepted the policy. If he was not immediately disabled, he cannot, in law or in morals, hold the de-

fendant liable. If we were to adopt the rule contended for here by plaintiff, it would place such a contract in the realm of uncertainty. If, where twenty-two days elapsed before the injury finally overpowered and disabled the plaintiff, we should hold that such disability was immediate, the same reasoning would apply if the period had been fifty days, and so on, for months, and perhaps years. It is said by medical writers that cases have been known where a slight injury received *in youth, from which the patient apparently recovered, has been the proximate cause of death in old age.* After days and months, and perhaps years, have elapsed, it is evident that the question as to whether or not the injury of itself finally wholly disabled the party would be a question, at least in many cases, difficult to determine. It might finally be solved in favor of the party who was most industrious in procuring witnesses, and particularly expert witnesses. We are of the opinion that it is a much safer rule to hold the parties to the plain, unambiguous reading of their contract.'' (The italics are ours.)

There is no dispute in the record but that the assured, Walters, continued to perform the usual and ordinary duties of his vocation from the date of the injury, which occurred sometime in December of 1926, and before Christmas of that year, until the 14th day of January, 1927, except for one or two days' time lost by him on account of tonsilitis. It was error for the court to find for the plaintiff and against the defendant for loss of life, under Part ''A'' of the contract.

III. Various other errors are complained of by the defendant. We have examined them all with care, but do not consider further comment necessary.

Inasmuch as we hold that the plaintiff, on the undisputed evidence in this case, cannot recover a death benefit, it is unnecessary to consider other questions which have been raised; for the case must be, and is hereby,—*Reversed.*

ALBERT, C. J., and EVANS, FAVILLE, and KINDIG, JJ., concur.