## KINGPIN INC. v. HILLCREST DEVELOPMENT.

126 N. W. (2d) 435.

January 31, 1964—No. 38,962.

*Robins, Davis & Lyons, Bernard Rosenberg,* and *Elliot Kaplan,* for appellant.

*Robert A. Dworsky, Richard E. Kyle, David C. Forsberg,* and *Briggs & Morgan,* for respondent.

FRANK T. GALLAGHER, C.

Appeal from an order denying plaintiff's alternative motion for amended findings or for a new trial and from the judgment in an action for a declaratory judgment to determine the rights of the parties under two warranty deeds containing covenants restricting the use to which certain commercial property may be put.

For purposes of brevity we shall refer to plaintiff, Kingpin Inc., as "Kingpin"; to defendant, Hillcrest Development, as "Hillcrest"; and

to defendant's lessees, Capitol Meats-Hillcrest Inc. and Lorraine's Milk Store, Dairy Home, as "Capitol Meats" and "Lorraine."

Hillcrest owns all of block 4, Hillcrest Center, St. Paul, Ramsey County, Minnesota, except the following property:

The south 80 feet 8 inches of the north 265 feet 4 inches of block 4, Hillcrest Center, St. Paul, Ramsey County, Minnesota.

This tract, the use of which is the subject of this lawsuit, is owned by Kingpin and was purchased in 1949 by its predecessors in interest from the predecessor in interest of Hillcrest.

Hillcrest also owns other property in the area which, together with block 4, constitutes what is commonly referred to as the Hillcrest Shopping Center.

The deeds pursuant to which these conveyances were made provided in paragraph 2:

"SECOND: *That the said parties of the second part,* [Kingpin] *their heirs, assigns and grantees, will not use the said premises, or any part thereof, nor any building erected on the said premises for any purpose other than a general food market for a period of twenty-five (25) years from the date hereof;* that the party of the first part [Hillcrest] does hereby grant to the parties of the second part, their heirs, assigns and grantees, the exclusive use and right to establish and maintain in Block four (4) Hillcrest Center, a general food market for a period of twenty-five (25) years from the date hereof, but such exclusive use and right shall not preclude the sale of drugs, sundries, candies, confections, ice-cream and kindred products, delicatessen, bakery goods or prepared meals or beverages by the party of the first part, its successors, assigns and grantees in the said Block 4, Hillcrest Center. The right to sell the foregoing items by others in said Block 4 shall not, however, prevent the sale of candies, confections, ice-cream, delicatessen, bakery goods or beverages by the parties of the second part so long as none of the same are consumed on the premises. It is understood and agreed that the first party, its successors and assigns, shall, in all conveyances of property in the said Block 4, Hillcrest Center, restrict the use thereof so that said property may not be used

for the establishment of a general food market for a period of twenty-five (25) years from the date hereof, as hereinbefore set forth, and the first party, its successors and assigns, shall not be liable to the second parties, their heirs, assigns or grantees, for damages sustained by reason of the failure of the grantees of the first party, its successors and assigns, to fulfill such restrictive agreement." (Italics supplied.)

The italicized portion of the above-quoted paragraphs contains the covenants which Kingpin seeks to have nullified in this action. It claims that it should be relieved of performing these covenants because Hillcrest by its leases to Lorraine and Capitol Meats has breached its covenant not to lease any other location in block 4 for operation of a general food market.

Among the establishments included in block 4, in addition to the one owned by Kingpin and the places leased by Capitol Meats and Lorraine, are an F. W. Woolworth Store, Crest Restaurant, Howard Owens Department Store, Coast to Coast Store, Big Wheel Auto Supply Store, and other enterprises. In block 7, adjacent to block 4 to the south, are Snyder Brothers' Drug Store and other places of business.

According to the record, a predecessor in interest of Kingpin erected a building on its property. Since April 1950, it has been used for the operation of a general food market selling a wide variety of food and nonfood items usually sold in so-called food markets in this area.

On December 9, 1954, Hillcrest leased about 1,200 square feet of floor space in block 4, known as 1664 White Bear Avenue, to William S. Rasmussen and Lorraine H. Rasmussen for a period of 5 years commencing January 1, 1955. The lease provided that the premises were to be used for the following purposes only:

"* * * For the sale of candies, confections, ice cream and kindred products, delicatessen, bakery goods (as hereinafter qualified) prepared meals, and beverages, except that the sale of bakery goods shall be limited to nationally or regionally advertised packaged bakery goods at full retail price and further that tenant shall not operate a general food market or grocery store, or a bakery shop."

Thereafter a new lease dated April 1, 1957, was entered into between Hillcrest and said lessees for a period of 5 years from that date and the previous lease was canceled by mutual consent of the parties. A covenant almost identical to the one quoted above was contained in the new lease. The lessees' interest in the lease was thereafter assigned to Dairy Home, Inc. At the time of the trial, the business on the premises had been operated for about a year by Frank G. Beck as sublessee of Dairy Home, Inc. As stated earlier, we shall refer to it as Lorraine.

The case was tried without a jury. With respect to the business carried on by Lorraine, the court found:

"Since January 1, 1955, the lessees and operators of said store [Lorraine] * * * have carried, stocked and sold milk and other dairy products, prepared meats, packaged bakery goods and a limited variety and quantity of other food and non-food products. The average inventory of said business has been approximately $5,000, and the annual gross business has been less than $150,000 a year. Said store has been open for business on Sundays and in the evenings and a large part of its business has been Sunday and evening business. * * * The Court finds that the business which has been conducted on said premises since January 1955 has not constituted and does not constitute the operation of a general food market within the meaning of paragraph Second * * *. The Court finds further that the plaintiff [Kingpin] and its predecessor in interest at all times had full knowledge of the nature and extent of the business being conducted on said premises and made no objection thereto until shortly prior to the commencement of this action."

The court also found that on or about August 7, 1961, Hillcrest leased for a period of 10 years approximately 2,500 square feet of store space in block 4, known as 1676 White Bear Avenue, to Capitol Meats. That lease provided that the premises should be used for the following purposes only:

"* * * Operation of a retail meat market for the sale of food and non-food products generally and customarily sold by retail meat mar-

kets or meat departments in supermarkets in the Twin Cities area, including but not limited to meat and meat products, fish, sea food and poultry (whether any or all of the same be fresh, prepared, packaged, frozen, processed, canned or bottled), shortening, lard, seasonings and condiments, delicatessen and confections, but notwithstanding anything to the contrary in the foregoing paragraph or in this lease, Tenant shall not use the leased premises for the establishment or operation of a general food market."

In a letter written shortly after execution of the lease this clause was amended to give Capitol Meats the right to sell "fresh fruits and vegetables" subject to the following provision:

"* * * However, notwithstanding the right to sell fresh fruits and vegetables or any other specific items permitted in the purpose clause, tenant shall not use the leased premises for the establishment or operation of a general food market. It is further understood and agreed that the right of tenant to sell any or all of the particular items listed in the purpose clause of the lease, as amended hereby, shall be subject to the prohibition against the establishment or operation of a general food market. 'General food market' as used in this letter and as used in said lease of August 7, 1961 shall include in its meaning and construction, but not be limited to, a 'general food market' as used in the Warranty Deed of October 26, 1949 made by Hillcrest Development Co. to Melvin Roth and Ruth M. Roth * * * and the Warranty Deed of December 20, 1949 from Hillcrest Development Co. to Hillcrest Super-Food Market, Inc. * * *."

The court found that Capitol Meats has carried in stock and sold retail meats, including fresh and frozen poultry and fish, and some food products and fresh fruits and vegetables in season. It also found that such activity did not constitute the operation of a general food market within paragraph 2 of the deeds and that the businesses conducted by Lorraine and Capitol Meats did not collectively constitute the operation of a general food market within the meaning of these paragraphs; that Hillcrest had not violated any of the terms of such

paragraphs; and that there existed no basis for granting the relief requested by Kingpin.

While finding that Hillcrest had not violated the covenants, conditions, and restrictions created and imposed by paragraph 2 of the deeds, the court also determined that these covenants were intended by the parties to the deeds to be, and were in fact, independent and not mutually dependent.

When this action was begun, Lorraine and Capitol Meats were also made defendants. However, a few months before trial Kingpin and these parties through their respective attorneys stipulated for dismissal of the action against them without prejudice. Hillcrest did not join in that dismissal or consent to it according to a statement made to the trial court by its attorney.

At the beginning of the trial, Kingpin's counsel in his opening statement outlined its position and placed in evidence the deeds covering the premises involved. He informed the court that all Kingpin was asking was that the court permit it to use this property as it sees fit, free from the restriction on use contained in the deeds, on the theory that the restriction is no longer enforceable by Hillcrest or its predecessors or successors in interest. Kingpin's further position was that no other party has an interest in, or would have a right to be heard on, the question whether the so-called mandatory requirement that Kingpin maintain and utilize the premises for 25 years as a general food market is enforceable.

It was Hillcrest's position that the Hillcrest Shopping Center was developed pursuant to a general plan; that the restrictive covenant providing that Kingpin may not use its property for any purpose other than a general food market for 25 years exists for the benefit of all grantees in said shopping center, including Snyder Brothers' Drug Store and F. W. Woolworth Company, which had been granted exclusive rights to operate a drug and variety store, respectively; that those grantees have the right to enforce the covenant against Kingpin and are necessary parties to this action as they are entitled to rely on the assurance afforded by the restriction and cannot be deprived of their rights without their day in court. The deeds containing the restriction

prohibiting Kingpin from using its property for anything other than a general food market were filed in 1950 and were of record when the Snyder and Woolworth leases were made, a copy of the restriction being incorporated into the Woolworth lease. Hillcrest maintains that it must be inferred that these lessees entered into their lease agreements in reliance upon the existence of the restrictive covenants which Kingpin here attempts to have declared null and void.

Hillcrest also informed the trial court that its position was that the court was without power to enter a declaratory judgment adjudicating that these restrictive covenants are no longer in effect. It insisted that Capitol Meats and Lorraine are necessary parties for a complete determination of that question and that the other tenants in block 4 and in the entire shopping center who have acquired rights in reliance upon the existence of these covenants are also necessary, and probably indispensable, parties.

Prior to the taking of any testimony at the trial, Hillcrest's counsel moved to amend its answer to allege that there were indispensable parties to the action who had not been made parties. Upon questioning by the court, he said that he was not insisting that such parties be brought in, but that if Kingpin wanted relief in this action, it should have them brought in.

Kingpin opposed the motion, claiming that it would be unjust to grant such an amendment at the moment of trial. The court denied Hillcrest's motion, but stated that it did not intend to preclude Hillcrest from introducing relevant evidence respecting its obligations toward these parties under the contracts with them. The case then proceeded for trial without further discussion of the proposed amendment, and evidence was introduced by both parties with reference to whether or not Lorraine and Capitol Meats were general food markets so that Hillcrest had breached its covenant not to lease any other location in block 4 for a general food market by its leases to them.

It is our opinion under the record here that there was evidence from which the trial court could find—as it did—that neither Lorraine nor Capitol Meats operated a general food market; that the businesses conducted by them did not collectively constitute the operation of a gen-

eral food market within the meaning of paragraph 2 of the deeds; and that Hillcrest had not violated any of the terms of such paragraph.

The findings of a trial court are not to be set aside if reasonably sustained by a consideration of all the evidence. In re Estate of Kelly, 177 Minn. 311, 225 N. W. 156, 67 A. L. R. 1268. They are not to be set aside unless clearly or manifestly against the weight of the evidence or without any reasonable support in the evidence. This rule applies although the construction of written or documentary evidence is involved. Sommers v. City of St. Paul, 183 Minn. 545, 237 N. W. 427.

Under the facts and circumstances here, the decision of the trial court that plaintiff is not entitled to any relief and that the action should be dismissed with prejudice is correct as a matter of law. This opinion is confined to the questions involving the present operations of Lorraine and Capitol Meats. Any future questions in connection with the issues herein considered must be determined upon their own facts.

Upon petition for rehearing, the opinion herein filed November 22, 1963, is withdrawn and the foregoing is substituted in place thereof. A rehearing is denied.

Affirmed.

OTIS, JUSTICE (concurring specially).
I concur in the result.