DELORES WILSON, appellee, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, appellant.

No. 51262.

(Reported in 128 N.W.2d 218)

MAY 5, 1964.

REHEARING DENIED JULY 16, 1964.

Ross H. Sidney and Thomas W. Carpenter of Austin, Grefe & Sidney, all of Des Moines, for appellant.

W. W. Reynoldson and R. E. Killmar of Killmar, Reynoldson & Harvey, all of Osceola, for appellee.

HAYS, J.—An insurance policy issued by defendant to Gary Wilson and Delores Wilson contained the following provisions:

"Insuring Agreement IV—Coverage S. Division I—Death Indemnity. To pay the principal sum stated * * * in event of the death of each insured which shall result directly and independently of all other causes from bodily injury caused by accident and sustained by the insured while occupying or through being struck by an automobile * * *." It further provided: "Exclusions—Insuring Agreement IV does not apply: (a) to bodily injury sustained in the course of his occupation by any person while engaged (1) in duties incident to the operation, loading or unloading of, or as an assistant on, a public or livery conveyance or commercial automobile, or (2) in duties incident to the repair or servicing of automobiles".

The plaintiff's petition, in a law action tried to the court, alleged the death of Gary Wilson when struck by a car and asked judgment for the face of the policy. Defendant's answer admitted that Gary Wilson died as result of being crushed by a com-

mercial automobile operated at the time by said Wilson. Defendant then denies coverage under Coverage S because of the exclusion of bodily injuries sustained in the course of the occupation of any person *while engaged in the operation* of a commercial automobile.

The trial court held the provisions of the policy were ambiguous, allowed full recovery by the plaintiff, and defendant appeals.

The facts are not in dispute. Decedent was in the employment of Borden Dairy of Des Moines, Iowa, as a retail route salesman, delivering milk from house to house in Osceola, Iowa. The truck used for such delivery was owned by Borden. It would be loaded early in the morning from another truck which brought milk from Des Moines. The driver would then drive his route, stopping at a house, taking into it the milk needed, drive on to the next house and repeat the operation. He would often exchange full bottles for empties. On the day in question the temperature was below zero and the streets were snow and ice packed. He was delivering along Temple Street which runs north and south. This street at the place in question has an incline to the north. Decedent approached the home of one Yost from the north and when he arrived opposite the house, stopped the truck, opened the door and alighted with the bottles of milk to be delivered to the Yost home. He closed the door of the truck and had gone some four or five feet toward the house when the truck started backing down the incline to the north. Decedent immediately chased after it and had gone some seventy feet, running alongside and trying to get control of it, when it took a sharp turn, overturned upon decedent crushing him to death.

Appellant assigns but one error which is of an omnibus nature and is as follows: "The trial court erred in holding that the exclusionary language applicable to the coverage involved in the policy did not apply because it was ambiguous and uncertain, and that the factual situation and circumstances surrounding said plaintiff's decedent's death did not fall within the exclusionary language."

I. The rule is clear that special limitations or exclusions on the right to recover under a policy of accident in-

surance, inserted in the policy after the general insurance clause, are affirmative defenses which must be pleaded and established by the insurer. Carpenter v. Iowa State Traveling Men's Assn., 213 Iowa 1001, 240 N.W. 639; Brush v. Washington National Ins. Co., 230 Iowa 872, 299 N.W. 403. In 29A Am. Jur., Insurance, section 1854, it is said "the principle generally applied by the courts is that if proof is made of a loss apparently within a contract of insurance, the burden is upon the insurer to prove that the loss arose from a cause of loss which is excepted or for which it is not liable, or from a cause which limits its liability"; Hiatt v. Travelers Ins. Co., 197 Iowa 153, 197 N.W. 3, 33 A. L. R. 655. Thus under above stated rule the sole issue before the trial court was whether the bodily injury, resulting in insured's death, was sustained in the course of the occupation of decedent while engaged in duties incident to the *operation* of a commercial automobile. While the trial court discusses and the appellant here argues other exclusion exceptions, i.e., loading or unloading a commercial automobile, such not having been affirmatively pleaded, are not before the trial court nor this court.

II. An instrument is deemed ambiguous when the language thereof is capable of being reasonably understood in either of two or more possible senses. As said in Pederson v. Bring, 254 Iowa 288, 117 N.W.2d 509, an ambiguity exists when a genuine doubt appears as to the meaning of the contract. It is the general rule that where insurance contracts are ambiguous or require interpretation, or are fairly susceptible of two different constructions, the courts will adopt that construction most favorable to the insured. In other words, the courts will give that construction to an accident policy, if the language fairly admits, as will make it of value and carry out the intention expressed therein, that liability is incurred where death occurs from an accidental injury. Brush v. Washington National Ins. Co., supra; Walters v. Mutual Benefit Health & Accident Assn., 208 Iowa 894, 224 N.W. 494; Mallinger v. State Farm Mut. Auto. Ins. Co., 253 Iowa 222, 111 N.W.2d 647. The trial court in holding the "Exclusionary Clause" to be ambiguous adopted the yardstick of "whether or not decedent as a reasonably prudent layman would have understood and intended that this exclusion would

prevent recovery under this policy in the particular fact situation confronting the court", citing Umbarger v. State Farm Mut. Auto. Ins. Co., 218 Iowa 203, 254 N.W. 87. See also New York Life Ins. Co. v. Rotman, 231 Iowa 1249, 3 N.W.2d 603; Couch on Insurance 2d, section 15:83.

Is the exclusionary clause ambiguous as applied to the operation? It states "to bodily injury sustained in the course of his occupation by any person while engaged (1) in duties incident to the operation * * *".

It may be conceded that decedent was acting in the course of his occupation at the time of his injury. The record shows Workmen's Compensation has been awarded. This is not enough to bar recovery on the insurance policy as the policy specifically provides "while engaged in duties incident to the operation * * *". What does this provision mean? "While engaged in", according to appellant, means occupied, employed; and has the same meaning as is usual under the Workmen's Compensation Act; according to appellee the term connotes action. Allied Mutual Casualty Co. v. Dahl, 255 Iowa 208, 122 N.W.2d 270. The term "duties" has a varied meaning. According to appellant, it means a moral obligation; according to appellee, it means a legal or contractual obligation. Either use may be proper dependent upon the intention of the users. "Incident" as used by both appellant and appellee appears to mean "something incident to something else", citing Webster, and also means "a thing which, either usually or naturally and inseparably depends upon, appertains to, or follows another that is more worthy." 2 Bouvier's Law Dictionary, Rawles Third Revision, page 1527. The term "operation" has been construed various ways by the courts. As stated by appellant the term "operation" *does not, of necessity,* require the presence of an individual in the vehicle or in control of the same. This is true but it is likewise true that the term "operation" *may have* such a meaning. Horst v. Holtzen, 249 Iowa 958, 967, 90 N.W.2d 41. Which one was intended?

From the foregoing statements it is abundantly clear that the "Exclusionary Clause" creates a genuine doubt as to which meaning is intended and an ambiguity exists. Pederson v. Bring, supra. Under the rules above stated, it was the duty of

the trial court to give to such words a meaning, if the language permits, as will carry out the provisions expressed in the coverage clause of the policy. The trial court held that decedent at the time of his death, in running after the moving milk truck, was not "engaged in duties incidental to the operation of the truck" within the contemplation of the parties. We think the language used is clearly susceptible of the interpretation placed thereon by the trial court. See Kingpin, Inc., v. Hillcrest Development, Minn., 126 N.W.2d 435.

It will be noted that the exclusionary clause also includes "duties incident to loading or unloading the truck". This is not pleaded as a defense. However, since both the court and the parties comment somewhat upon this provision, we wish to state that the meaning of the term "unloading", which is claimed to be applicable, is ambiguous. See 7 Am. Jur.2d, Automobile Insurance, sections 87, 88; 160 A. L. R. 1259, and required the construction thereof by the court. We agree such term is not applicable to the facts in issue.

Under the record this court could not as a matter of law say that decedent met his death while engaged in duties incident to the operation, loading or unloading of a commercial automobile within the purview of said "Exclusionary Clause".

The judgment of the trial court is affirmed.—Affirmed.

GARFIELD, C. J., and PETERSON, THORNTON and LARSON, JJ., concur.

THOMPSON, SNELL, MOORE and STUART, JJ., dissent.

THOMPSON, J.,—With great respect, I dissent.

The majority opinion, as with the argument for the plaintiff and the holding of the trial court, is an exercise in semantics. The words of the exclusionary clause of the insurance policy are analyzed at length with the apparent intent of finding some obscure meaning which will support a determination of ambiguity. But the analysis is not convincing. The language of the exclusion is clear and permits but one conclusion: that the policy by its definite and clear terms did not cover the injury sustained by the insured.

I. The rules governing the proper determination of this case are well settled. If the language used in the policy is ambiguous, if it permits of more than one interpretation, it must be construed against the insurer. So the search for something which might be construed as ambiguity is pursued. I cannot agree that it is found.

The construction of a written contract that is unambiguous is for the court rather than for the finder of facts. Daggett v. Nebraska-Eastern Express, 252 Iowa 341, 351, 107 N.W.2d 102, 108; Marty v. Champlin Refining Co., 240 Iowa 325, 335, 36 N.W.2d 360, 365.

Also there is no contention but that if the trial court has misconceived the law, or has found facts for which there is no substantial support in the record, we should reverse. Alsco Iowa, Inc., v. Jackson, 254 Iowa 837, 839, 840, 118 N.W.2d 565, 567; Cleary v. Wolin, 244 Iowa 956, 957, 58 N.W.2d 830.

II. The majority seem to contend that because the trial court found ambiguity as a fact, we are bound thereby. Without doubt, if differing reasonable inferences may be drawn, even from undisputed facts, this is the rule. So in Allied Mutual Casualty Co. v. Dahl, 255 Iowa 208, 122 N.W.2d 270, the material question concerned an employee who had been hired to pass out political handbills at a public gathering. When the original employment was finished, the employee and others who had worked there were asked if they wished to hand out the bills at another location some distance away. They agreed, and were offered a ride in a truck to the scene of the new activity. While so riding the defendant was injured. We held it was a fact question whether he was still engaged in his occupation, or whether the ride was a mere gratuity not connected therewith. It was not a matter of construction of a contract, such as we have here. Kingpin, Inc., v. Hillcrest Development, Minn., 126 N.W.2d 435, cited by the majority, involved the question whether there was an operation of a general food market within the terms of a covenant in a deed. The gist of the case is quoted: "It is our opinion under the record here that there was evidence from which the trial court could find—as it did—that neither Lorraine nor Capitol Meats operated a general food market * * *." The determination was

that there was evidence supporting the fact findings of the trial court. The case has no bearing on our question here.

III. Indeed, after all the arguments and contentions over the use and meaning of words are ended—in fact, before they begin—the question before us is a simple one: Was the exclusionary clause ambiguous? It states in plain terms that the insurance did not apply to "bodily injury sustained in the course of his occupation by any person while engaged (1) in duties incident to the operation, loading or unloading of * * * a * * * commercial automobile." The trial court, and the majority, rely here upon the settled rule that the question is whether the decedent, as a reasonably prudent layman, would have understood that this exclusion would prevent recovery under the facts which developed. Authorities are cited.

With the cases I have no dispute. But I am convinced no reasonable layman could have misunderstood the language used. Only a lawyer could find anything ambiguous about it; and the strained and involved attempts to make words mean what they plainly do not is proof that ambiguity is lacking.

The pertinent question is, was the decedent engaged in duties incident to the operation of a commercial automobile? It is not disputed that the milk truck was such an automobile; and the trial court in its opinion said: "* * * the uncontroverted evidence shows that the deceased Gary Wilson was at the time of death an employee of the Borden Company in the operation of a milk delivery truck; * * *." Only two questions can arise: was the decedent engaged in the operation of the truck as he ran beside it attempting to get control, and, perhaps more particularly, was he engaged in duties incident to its operation at that time?

As to whether he was operating the truck, the point is settled by our decision in Horst v. Holtzen, 249 Iowa 958, 90 N.W.2d 41. There we have a situation much more remote from active operation of the motor vehicle than the one before us. The driver of the car had left it parked, with the plaintiff and others already in it as passengers, while she went across the street to assist another, an elderly woman, to cross and to enter the automobile. As the new passenger entered the car, and while

the driver was still standing beside it, the vehicle started, ran down a hill and injured the plaintiff. We held the defendant was nevertheless operating the car at the time. Compare the instant situation, where the driver, the decedent, was also outside the car but was running beside it attempting to enter it and gain control.

In Horst v. Holtzen, supra, at pages 969 to 971 inclusive of 249 Iowa, pages 47, 48 of 90 N.W.2d, are cited a considerable number of authorities which hold that a motor vehicle is operated even when standing. It is possible to conceive of situations in which the question of operating might be factual; but as the uncontroverted record here shows, the decedent had parked or at least stopped the truck, it immediately started to coast down the hill, and he, also immediately, ran after and beside it to correct his initial mistake.

IV. Actually, the question here is a somewhat narrower one than the operation of the truck. The exclusion clause is based upon the engagement in duties incidental to the operation. The majority seizes upon what it asserts are varied meanings of the words "duties" and "incident".

It must be obvious that if we are to hold that the use of a word which has different uses as defined by dictionaries makes a contract ambiguous, it would be impossible to draw a written agreement which would not have that defect. There is hardly a word to be found in the lexicons which is not possible of varied uses. Thus the definition of the word "the", perhaps the most commonly used in the English language, requires one and one-half columns of fine print in Webster's Third New International Dictionary. And if an attempt were to be made to specify the meaning of any given word by writing such intended meaning in the contract, it would be necessary to use other words, which in turn would have several uses and meanings. The whole context must be considered in determining the meaning of the words used rather than by splitting hairs to produce an ambiguity which does not fairly exist.

A part of the operation of the truck, a duty incident to its operation, was to stop and park it properly and safely, when making his deliveries. I do not apprehend this can be seriously

debated. Safe parking of the vehicle was surely a duty incident to its operation. So, when he stopped on the occasion which resulted in his death, his duty was to leave the truck safely parked while he made his delivery. As he started away, he found he had not performed this duty; the machine was starting to slide back down the incline. He attempted to remedy his first failure to park securely and safely, by running to the truck to gain control and stop it; without doubt, to see that it was properly parked. Unfortunately his act resulted in a fatal accident; but it is still obvious that he was performing a duty incident to the operation of the truck. If we are to say that because his attempt resulted in his death, which was no part of his duty, he was not engaged in a duty incident to operation we have begged the question. Automobile accidents are rarely intentional; they result from some mistake, or miscalculation, or misfortune; but the driver was still operating; he was attempting to perform some duty incident to operation. That he may have performed it poorly, or met with dire calamity in his attempt, is entirely beside the point.

I can see no ambiguity in the exclusionary clause, and no support for the decision of the trial court or the majority opinion. I would reverse, with directions to dismiss plaintiff's cause of action.

SNELL, MOORE and STUART, JJ., join in this dissent.