ATTORNEYS FOR APPELLANT
Charles R. Vaughan
Linda H. Havel
Lafayette, Indiana

ATTORNEYS FOR APPELLEE
Stephen R. Pennell
William P. Kealey
Lafayette, Indiana

# In the
# Indiana Supreme Court

No. 79S05-0506-CV-289

TIPPECANOE ASSOCIATES II, LLC,

*Appellant (Defendant below),*

v.

KIMCO LAFAYETTE 671, INC.,

*Appellee (Plaintiff below).*

Appeal from the Tippecanoe Superior Court, No. 79D02-0112-CP-249
The Honorable Thomas H. Busch, Judge

On Petition To Transfer from the Indiana Court of Appeals,
No. 79A05-0302-CV-85

**June 23, 2005**

**Boehm, Justice.**

We hold that a covenant given by a shopping center to a tenant prohibiting the center from leasing to competitors of the tenant is generally enforceable. However, once the tenant or its successor voluntarily relinquishes the original use of the site, the anticompetitive covenant is severed from the occupancy and no longer enforceable to give the tenant or an assignee the right to restrict competition for a location outside the center.

## Facts & Procedural History

In 1973, SES Development Company leased one of the stores in its Sagamore shopping center to Kroger Company for an initial term of twenty years, with four options to renew the lease, each for a term of five years.[1] The lease contained a restrictive covenant preventing SES from leasing space in the shopping center to another grocery store. Kroger operated a supermarket at the leased premises until 1982. In 1983, Kroger closed all three of its Tippecanoe County stores and assigned their leases to Pay Less Super Markets, Inc., which at the time operated two other grocery stores within two miles of the Sagamore Center.[2] After the assignment, Pay Less opened stores in two of the former Kroger sites, but Pay Less cheerfully concedes that it never intended to operate a grocery store in the Sagamore Center and acquired the Sagamore lease for the purpose of excluding competitors of its nearby stores. In 1984, Pay Less subleased its Sagamore space to H.H. Gregg, an appliance dealer, who remains in that location today.[3] The defendant, Tippecanoe Associates II, LLC, is a limited liability company owned by the family controlling Pay Less and the current holder of the Sagamore leasehold interest Pay Less acquired from Kroger. Tippecanoe acquired the lease in a series of maneuvers and seeks to enforce this thirty-year-old covenant against the current owner of the center, Kimko Lafayette 671, Inc.,[4] even though there has been no grocery store in the center since 1982.

In 2000, another large tenant, Target, left Sagamore Center, leaving nearly one-half of the center's space unoccupied. Kimco contends that the only prospective tenant to fill the void caused by Target's departure is Schuncks, a Missouri-based operator of grocery stores. Kimco filed a complaint asking the trial court to declare the restrictive covenant unenforceable. After a hearing the trial court granted Kimco's request, reasoning that "the use of the property and the surrounding area have changed so radically . . . that the original purpose of the covenant can no longer be achieved."

---

[1] In 1974, the lease was amended by a lease modification agreement to provide that the initial lease began on June 1, 1974 and ended on May 31, 1994.

[2] The record is not clear as to how many other grocery stores, if any, Pay Less operated in the county.

[3] If H.H. Gregg chooses to exercise its options, it has the right to continue to occupy the former Kroger space at Sagamore Center until the expiration of the lease on June 1, 2014.

[4] In 1997, Kimko Lafayette 671, Inc., purchased the center from SES, subject to the Pay Less lease and the H.H. Gregg sublease.

The Court of Appeals reversed, concluding that Tippecanoe's lease of the space to an appliance store and the empty space resulting from the Target move are not sufficient changes in the covenant to support invalidating the restrictive covenant. Tippecanoe Assoc. II, LLC v. Kimco Lafayette 671, Inc., 811 N.E.2d 438, 448-49 (Ind. Ct. App. 2004). The result is that Tippecanoe, which operates grocery stores within a few miles of the center, is allowed to enforce a restrictive covenant that neither benefits the shopping center nor Tippecanoe's interest in the shopping center (its sublease to H.H. Gregg). We now grant transfer.

### Restrictive Covenants in Shopping Centers

Indiana law permits restrictive covenants but finds them disfavored and justified only to the extent they are unambiguous and enforcement is not adverse to public policy. One Dupont Ctr., LLC v. Dupont Auburn, LLC, 819 N.E.2d 507, 516 (Ind. Ct. App. 2004). Doubts should be resolved in favor of the free use of property and against restrictions. Id. However, courts have been quite willing to enforce restrictive covenants written in shopping center lease contracts even though they prevent competition within the center. See, e.g., Almacs, Inc. v. Drogin, 771 F. Supp. 506, 513 (D. R.I. 1991); Whitinsville Plaza, Inc. v. Kotseas, 390 N.E.2d 243, 252-53 (Mass. 1979); Kingpin, Inc. v. Hillcrest Dev., 126 N.W.2d 435, 439 (Minn. 1964); Keith Hardware v. White, 956 S.W.2d 500, 501 (Tenn. Ct. App. 1997) ("[R]ather than restricting competition, such covenants serve to facilitate trade and induce tenants to rent in a particular shopping center. . . . It is reasonable for the plaintiff to want to avoid competition within this center."); 49 Am.Jur.2d Landlord and Tenant § 70 (1995).

Restrictive covenants in shopping center leases have, for the most part, been found not to restrain competition unreasonably and have been generally found to be consistent with the public interest. The rationales for this result focus on the need to encourage the investment in new development by both the shopping center developer and its tenants. See, e.g., Vt. Nat'l Bank v. Chittenden Trust Co., 465 A.2d 284, 287 (Vt. 1983). Courts have recognized that landlords and tenants of shopping centers invest considerable sums of money to make the center attractive to customers. Parker v. Lewis Grocer Co., 153 So. 2d 261, 272 (Miss. 1963) ("Tremendous outlays of venture capital and risk are required and entailed from the supermarket tenant as well as the developer-landlord. Restrictive covenants in the nature of ancillary and reasonable restraints are

3

absolutely required to induce investors to place a new venture in such untried area."); Wal-Mart Stores, Inc. v. Ingles Mkts., Inc., 581 S.E.2d 111, 116 (N.C. Ct. App. 2003) ("The development of new shopping centers requires tremendous outlays of venture capital and risk by prospective tenants as well as by landlords; restrictive covenants against unwanted competition are consistent with the public interest in such development."). Thus, restrictive covenants have allowed shopping centers to offer "noncompetitive and diversified, but interrelated, businesses designed not to serve just one need but as many needs of the consumer as is feasible within the economic framework of the shopping center." Annotation, 97 A.L.R.2d 4, 11 (1964). Accord Valley Prop., Inc. v. King's Dep't Stores, Inc., 505 F. Supp. 92, 95 (D. Mass. 1981) (restrictive covenants are "necessary inducements to shopping center tenants which facilitate the orderly and harmonious development for commercial use of real property"). All of these cited reasons support limiting the covenant to protection of current tenants of the center. Both the trial court and the Court of Appeals agreed that the initial covenant to Kroger was enforceable. In evaluating Kimco's claim that the covenant created in 1982 was no longer enforceable, the trial court and Court of Appeals focused on whether there have been significant changes in the circumstances. We think there is only one factor that is central and dispositive here. Because the Kroger site in the Sagamore Center is no longer being used as a grocery store location, there is no interest within the center for the restrictive covenant to protect. Pay Less is attempting to use the covenant to restrict competition for its grocery stores located at other locations. Kroger was within its rights to assign the lease to Pay Less, and if Pay Less had chosen to continue grocery operations at the center, its interest in the lease would support enforcement of the covenant. However, Pay Less voluntarily abandoned grocery operations in the center and thereby severed the restrictive covenant from the occupancy.

The shopping center obviously receives no benefit from permitting a transfer of the covenant. And it seems unlikely that a prospective new tenant would be significantly motivated by the prospect of recouping its investment by selling a restrictive covenant to a nearby competitor if the tenant's business fails. In any event, the effect of permitting a covenant to be sold separately from the operation it is designed to protect is perhaps to add some minimal value to the original lessee, but at considerable cost to the lessor and the public. None of these rationales suggests a powerful reason to permit a secondary market in restrictive covenants divorced from the real estate they are designated to protect. It is one thing to conclude that restrictive covenants

4

in leases of shopping center tenants should be enforceable to protect the interests of the center and those tenants who have a current protectible interest within the center. It is quite another to permit enforcement of an anticompetitive covenant by someone foreign to the center who simply acquires the right to exclude competition without making any investment in the center. And the interest of the original lessee, Kroger in this case, may well be fully served by permitting enforcement of the covenant as long as it or a successor operates a grocery store in the center.

Finally, the issue is not whether the covenant violates federal or state antitrust law. We assume Judge Posner was correct in his passing observation deeming "implausible" a claim that federal antitrust law prevented a drug store from invoking a shopping center covenant to exclude a competitor.[5] But the issue here is not whether the antitrust laws prevent enforcement of such a covenant. It is whether state law permits its enforcement not by a tenant of the center, but in the hands of one who has never occupied the center and merely attempts to purchase the right to exclude competition from a remote site. As the comment to the Restatement (Second) of Contracts explains:

> [T]he restraint may be unreasonable in either of two situations. The first occurs when the restraint is greater than necessary to protect the legitimate interests of the promisee. The second occurs when, even though the restraint is not greater than necessary to protect those interests, the promisee's need for protection is outweighed by the hardship to the promisor and the likely injury to the public.

Restatement (Second) of Contracts § 188 cmt. a (1981). This restraint is an example of a restriction that "proscribes types of activity more extensive than necessary to protect those engaged in by the promisee." Id. § 188 cmt. d. Usually if a restriction is unenforceable it is because it prohibits an overbroad "type of activity" by the promisor. In this case it is the protected activity of the promisee that needs to be narrowed to bring the justification and the existence of the restriction into harmony. It is true that this concern usually comes up in the context of an agreement not to compete, but the rationale is equally applicable where the agreement prevents the owner of a shopping center from leasing to a specified type of store that is no longer present in the center.

---

[5] The issue was expressly not addressed in Walgreen Co. v. Sara Creek Prop. Co., 966 F.2d 273, 274 (7th Cir. 1992) ("Such an exclusivity clause, common in shopping-center leases, is occasionally challenged on antitrust grounds, . . . but that is an issue for another day . . .").

The restriction also runs afoul of the second concern: it is excessively burdensome to the public and the promisor compared to a remote promisee's need for protection. There is little doubt that a competitor in the same center may be harmful to a given store, even if overall competition is unharmed. The fact that tenants demand and seek to enforce these covenants demonstrates that. Indeed, the justification for the restriction is incentive for the tenant to invest—assuming the tenant expects to be benefited from the restriction. Similarly, Tippecanoe's effort to enforce the covenant demonstrates its belief that sales will flow to a new store if one is placed in the center. It follows that the convenience of the public and certainly the interest of the landlord are served by having a grocery store in the center.

The issue under the Sherman Act is whether there is an adverse effect on competition, i.e. whether overall competition suffers if a second drugstore is precluded from operating in a single shopping center. United States v. Visa USA, Inc., 344 F.3d 229, 242 (2d Cir. 2003) (in a Sherman Act action, "the proper inquiry is whether there has been an *actual* adverse effect on competition as a whole in the relevant market.'" (emphasis in original)). A typical shopping center covenant has no such effect because customers in the center are served by the one seeking to enforce the covenant, and other locations for competitors are plentiful. See, e.g., Keith Hardware, 956 S.W.2d at 501. The issue here, however, is whether it is reasonable to deny the public access to any grocery store in the center and to deny the center the benefit of a grocery store and perhaps of any tenant at all for one of its largest spaces. Enforcement of the covenant in the hands of a non-tenant runs afoul of the policy against restrictive covenants unless justified by legitimate concerns of the promisee balanced against the interests of the public and the detriment to the promisor. As explained above, the policy usually justifying covenants in shopping centers—protection and encouragement of investment—is inapplicable here. The only policy the dissent identifies is naked enforcement of contracts. That is not a sufficient policy reason. If it were, all restrictive covenants would be enforceable. But the law recognizes that public interest may under some circumstances limit the ability of private parties to arrange their affairs. This is such a case.

In sum, because Pay Less voluntarily relinquished the Kroger site as a grocery store location, it cannot enforce the restrictive covenant to prevent the shopping center from leasing to a

grocery tenant. We hold that the restrictive covenant is not enforceable and cannot be used to stop competition and protect the holder's interests at some other site.

## Conclusion

We affirm the trial court's declaratory judgment that the restrictive covenant has been severed from the occupancy and is unenforceable.[6]

Dickson and Rucker, JJ., concur.

Sullivan, J., dissents with separate opinion in which Shepard, C.J., joins.

---

[6] We summarily affirm the Court of Appeals on all issues not addressed in this opinion. Ind. Appellate Rule 58(A)(2).

**Sullivan, Justice, dissenting.**

The Court here declares unenforceable a covenant in a contract bargained for at arm's length by two sophisticated parties. I respectfully dissent.

It is on grounds of public policy violation that the Court sets aside this contract: the covenant, the Court says, is "anticompetitive." But the trial court made no findings as to the degree of competition among grocery stores in the Lafayette market and the Court cites no evidence of any.

It is true that the reported cases challenging the enforceability of shopping center lease covenants like this one—cases the Court must distinguish because they all uphold the covenants—involve situations where the beneficiary of the restrictive covenant continues to be in the business that is the subject of the covenant. The Court says it makes a difference that the beneficiary of the covenant here is in a different business. That does not justify setting aside a freely-bargained-for contractual provision <u>unless</u> competition is materially and adversely affected by the covenant—that the citizens of Lafayette must pay more for their groceries or travel unreasonable distances to buy them or the like. There is, to repeat, no evidence of any of that here. In setting aside the covenant on this record, the Court favors one business (the landlord) by depriving the other (the lessee) of the benefit of its bargain without any evidence of any compensating benefit to the public.

Judge Posner has called challenges to the enforceability of shopping center restrictive covenants on antitrust grounds "implausibl[e] . . . given the competition among malls." <u>Walgreen Co. v. Sara Creek Property Co.</u>, 966 F.2d 273, 274 (7th Cir. 1992) (Posner, J.). And two scholars have observed that:

> A noncompetition clause in a lease of property ordinarily poses no threat to the competitive process, since the arrangement restrains one person in a relevant market that normally is replete with competitors engaged in vigorous competition with one another. Absent the effect of creating or tendency to create a monopoly in the relevant geographic market, such ancillary restraint should be upheld.

Milton Handler and Daniel E. Lazaroff, Restraint of Trade and the Restatement (Second) of Contracts, 57 N.Y.U. L. Rev. 669, 679 (1982).

The Court says that Judge Posner's comment and the Handler and Lazaroff analysis are irrelevant because they address the applicability of antitrust statutes, not common law, to such covenants. But it was not the provisions of any statute that caused Judge Posner to call antitrust challenges to the enforceability of these covenants "implausible"; it was simply because these covenants don't adversely affect competition "given the competition among malls." Walgreen Co., 966 F.2d at 274. The Court's discussion of antitrust statutes reminds us that the legislative branch has undertaken to regulate competition where it has found it to be appropriate. That the legislative branch has not chosen to do so in these circumstances is another reason why I believe the court should not undo this contract.

I also dissent from the Court's willingness to go beyond declaring this particular covenant unenforceable and mandate that all such covenants are and will be unenforceable whenever they are "severed from the occupancy." This rewrites existing commercial leases and restrains the ability of parties in the future to enter them on terms they view to be mutually beneficial, regardless of whether there is any demonstrable adverse effect on competition.

I would affirm the decision of the Court of Appeals.

Shepard, C.J., joins.